519 So.2d 84 (1988)
Benjamin HENRY, Appellant,
v.
STATE of Florida, Appellee.
No. 4-86-2542.
District Court of Appeal of Florida, Fourth District.
February 3, 1988.
Richard L. Jorandby, Public Defender, and Margaret Good, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Eddie J. Bell, Asst. Atty. Gen., West Palm Beach, for appellee.
*85 DOWNEY, Judge.
Appellant, Benjamin Henry, appeals from a judgment of conviction of kidnapping, robbery and aggravated battery and three concurrent sentences of twelve years' imprisonment.
It appears from the statement of the facts set forth in appellant's brief, generally approved by appellee, that on the night of February 10, 1986, Erick Sanchez was making a pizza delivery to a residence in Lauderhill where he was greeted at the house by an armed man wearing a nylon stocking mask. The man robbed him of his money and demanded a ride. During the course of the ride, Sanchez initiated a struggle with the robber, who hit Sanchez in the mouth several times with a gun. As the robber fled from the car, Sanchez pulled the mask off his head and was able to briefly see a side view of the robber's face.
At a hearing on Henry's motion to suppress lineup and in-court identification, Detective Sweeney testified she showed Sanchez a six photograph array with the explanation that she believed the suspect involved may possibly be among the photos and asked Sanchez to see if he could identify the suspect. Sanchez had previously described the suspect as wearing an outfit with a name patch over the left pocket area. Among the six photos were two in which the subject had a name patch on the left pocket area of his clothing. Sweeney testified Sanchez took less than ten minutes to identify Henry's picture; whereas, Sanchez testified at trial that it was twenty to twenty-five minutes because some were too big or too fat and others too small. In any event, the motion to suppress was denied and the case proceeded to trial.
Sanchez identified Henry at trial as the person who robbed him. He stated that, when he arrived at the house in Lauderhill to deliver the pizza, it was dark but there was a light in the back of the house in the kitchen. The robber had on a stocking mask through which Sanchez could see the structure of the robber's face. The whole episode with the robber lasted no more than 15-20 minutes. While the robber was in the passenger seat of the car, Sanchez was able to look at his face with the mask on. While driving at thirty to forty miles per hour, the two began to fight and the robber hit him in the mouth twice and broke off several of his teeth. Finally, as the robber was jumping out of the car, Sanchez grabbed the mask off of his head and was able to see the side of the robber's face that was facing him. The light was on inside the car at this time, and the high beam headlights from the car behind him reflected inside the car.
Although Sanchez testified at trial that he was positive about his identification at the photo lineup, he admitted that the fact the subject in photo # 5, which he identified as Henry, was wearing a name patch on his clothing influenced his identification. Furthermore, he admitted that his in-court identification of Henry was based on the recollection of the photo, although not entirely.
Henry presents four points for our appellate consideration, only two of which require mention. In the first point, Henry contends the out-of-court identification of him was so unnecessarily suggestive that, under the circumstances of the case, it was unreliable and error to admit it. Secondly, Henry contends that a discovery violation occurred and the trial court failed to conduct a proper Richardson[1] hearing, requiring reversal.
We have carefully considered the transcript and the record and find there was indeed a discovery violation in that latent fingerprints were taken from the car by the police and compared with Henry's fingerprints. However, neither the prosecutor nor defense counsel knew this until it came out during trial. The court discussed this apparent discovery violation with counsel out of the presence of the jury and determined the prosecutor was totally surprised by the existence of fingerprints, but the state had no intention of using them at trial. The court afforded defense counsel the opportunity to plumb the circumstances of the discovery violation further but counsel *86 declined further inquiry without ever showing any prejudice to the defendant. A demonstration of prejudice to the defendant is, of course, the essence of a Richardson hearing if there has been a state violation of the discovery rules. Failing to take the opportunity to demonstrate possible prejudice to the defendant, Henry cannot now complain of a Richardson violation. There was none here.
The reversible error we find in the case is the admission of the out of court identification. As the supreme court said in Grant v. State, 390 So.2d 341 (Fla. 1980):
The primary evil to be avoided in the introduction of an out-of-court identification is a very substantial likelihood of misidentification. "Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." Neil v. Biggers, 409 U.S. 188 at 198, 93 S.Ct. [375] at 382 [34 L.Ed.2d 401 (1972)]. But as the analysis has evolved, a suggestive confrontation procedure, by itself, is not enough to require exclusion of the out-of-court identification; the confrontation evidence will be admissible if, despite its suggestive aspects, the out-of-court identification possesses certain features of reliability. Hence the appropriate test is twofold: (1) did the police employ an unnecessarily suggestive procedure in obtaining an out-of-court identification; (2) if so, considering all the circumstances, did the suggestive procedure give rise to a substantial likelihood of irreparable misidentification. The factors to be considered in evaluating the likelihood of misidentification include
the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.
Id. at 343 (citations omitted). In the present case we have a criminal incident committed at night. The criminal had a stocking mask covering his head; the entire episode took about twenty minutes from front door confrontation to the car ride and fight en route to the criminal's departure at the end of the ride. The victim looked at the criminal's face, covered by the stocking mask, while in the car and presumably while the criminal was bashing the victim in the face with a gun breaking his teeth off. The light was on in the car at least part of the time and at the end of the trip when the criminal jumped out of the car and appellant jerked the stocking mask off. In addition, a following car had its headlights on the subject car. Perhaps, if that was all there was to the identification determination, we would be compelled to agree with the trial judge's finding. However, in the face of this tenuous identification setting, Sanchez, the victim, admitted that the picture of Henry with a patch on his clothing influenced his decision to pick Henry as his assailant. This, we believe, compounded by the officer's initial statement to Sanchez at the photo lineup that she believed the suspect involved may possibly be in the photos and asked him to identify the suspect, created an unnecessarily suggestive identification procedure and so taints the lineup, considering the difficulties of identification during the commission of the crime, as to give rise to a substantial likelihood of irreparable misidentification.
Accordingly, we find the admission of the out-of-court identification error and reverse the judgment and sentence and remand for a new trial.
DELL and WALDEN, JJ., concur.
NOTES
[1] Richardson v. State, 246 So.2d 771 (Fla. 1971).