531 So.2d 219 (1988)
Margaret ELKIN, Appellant,
v.
The STATE of Florida, Appellee.
No. 87-523.
District Court of Appeal of Florida, Third District.
September 13, 1988.
*220 Mark King Leban, Miami, for appellant.
Robert A. Butterworth, Atty. Gen., and Mark S. Dunn and Ralph Barreira, Asst. Attys. Gen., for appellee.
Before SCHWARTZ, C.J., and NESBITT and JORGENSON, JJ.

On Motions for Clarification and Rehearing
PER CURIAM.
We grant the parties' motions for clarification and deny the appellee's motion for rehearing, vacate our previous opinion and replace it with the following:
The defendant appeals her conviction for first-degree murder. For the following reasons, we reverse and remand for a new trial.
During the investigation of the defendant concerning the murder of her husband, police took statements from her on four separate occasions. One such statement occurred following her visit to the funeral home to view her husband's body on the evening of December 16, 1983. While the defendant was at the funeral home, a detective telephoned her to request that she submit to another interview. At the time she was taken by police from the funeral home to the station house, she was already considered a suspect, yet she was not given her Miranda rights. While the interrogating officer testified that in his mind she was free to leave at any time, the record shows that this fact was never communicated to her. A station house interrogation is inherently more coercive than an interrogation in other less suggestive settings and may lead reasonable persons to believe their freedom of action is restricted in a significant way. Drake v. State, 441 So.2d 1079, 1081 (Fla. 1983). For this reason, the trial court erred in admitting this statement into evidence at trial against her.
As part of the state's evidence relating to the defendant's alleged motive in having procured the murder of her husband, a man, Joe Loggins, was correctly permitted to testify that the defendant told him and his wife that she would pay him $10,000 "to get rid of Cecil," and that "because I got double indemnity on my insurance," she would pay him $20,000 if it looked like an accident. At some point, the defendant suggested that Joe Loggins could take Cecil Elkin out in a boat and say that his hat blew off and that Cecil fell overboard while trying to retrieve it. However, the court erred in permitting the jury to hear the testimony of an insurance agent, Charles Gorrill, who testified that the defendant's previous husband, one Sam Smilich, was found drowned in a canal and that the defendant received double indemnity insurance benefits due to his accidental drowning. No connexity existed between the death of Smilich and the murder of the defendant, State v. Norris, 168 So.2d 541 (Fla. 1964). Consequently, the admission of Gorrill's testimony could have created an egregious impression in the minds of the jury of the defendant's bad character or propensity to commit crimes based on the implication that she had caused the drowning *221 and murder of her previous husband. Keen v. State, 504 So.2d 396 (Fla. 1987).
We entirely reject the defendant's claim that a directed verdict should have been entered in her favor at the close of the state's case-in-chief. She contends that the state's circumstantial evidence against her failed to overcome her reasonable hypothesis of innocence, namely, that an intruder entered the marital home and murdered her husband while she was away on an errand at the drugstore and that upon her return she saw a "big black" run from the home. To the contrary, there was evidence that the defendant had told a witness she could procure a "big black" to murder her husband. Despite defendant's claim that she had driven to the drugstore to purchase medication, there was evidence that she never left her vehicle.
Furthermore, witnesses described her desire to rid herself of her husband. Although the evidence demonstrated the husband was highly security-conscious, there was no evidence of a break-in or explanation of how an intruder might have gained entrance to the home to have murdered her husband. Shortly before the homicide, the defendant redeemed a certificate of deposit in the amount of $36,000 and immediately repurchased a lesser one in the amount of $26,000. This is only part of the salient evidence upon which there were conflicting inferences concerning the defendant's reasonable hypothesis of innocence or guilt. Nor do we agree with the defendant's suggestion that the evidence presented by the state against her at the first trial less that ordered excised by this court will be insufficient in a second trial to support a first-degree murder prosecution against the defendant.
Other points raised by the defendant do not merit discussion.
For the foregoing reasons, the defendant's judgment of conviction is reversed and remanded with directions to award her a new trial.