544 So.2d 1115 (1989)
Nathaniel BUTLER, Appellant,
v.
The STATE of Florida, Appellee.
No. 88-1212.
District Court of Appeal of Florida, Third District.
June 13, 1989.
Hamar and Hamar and Richard Hamar, Miami, for appellant.
Robert A. Butterworth, Atty. Gen., and Julie S. Thornton, Asst. Atty. Gen., for appellee.
*1116 Before NESBITT, FERGUSON and LEVY, JJ.
PER CURIAM.
The defendant appeals his first-degree murder conviction. For the following reasons, we reverse and remand for new trial.
Nathaniel Butler was stopped by detectives based upon their "hunch" that Butler was involved in a shooting. Butler was first detained on the street by police using their vehicle's blue light and siren. He was searched and separated from his money, keys, and car. He was taken by police to the station house where he was then interrogated in a small room without windows or phone. He was never told he could make a phone call. He was not given his Miranda rights until sometime later. While the interrogating officer testified that in his mind Butler was free to leave at any time, the record shows that this fact was never communicated to Butler.
A station house interrogation is inherently more coercive than an interrogation in other less suggestive settings and may lead reasonable persons to believe their freedom of action is restricted in a significant way. Elkin v. State, 531 So.2d 219 (Fla. 3d DCA 1988), citing Drake v. State, 441 So.2d 1079, 1081 (Fla. 1983), cert. denied, 466 U.S. 978, 104 S.Ct. 2361, 80 L.Ed.2d 832 (1984). Therefore, we conclude that the trial court erred in admitting into evidence at trial Butler's statement made during this interrogation.
Next, in a photo lineup weeks after the incident, the driver and passenger of a vehicle which passed the scene of the shooting identified Butler as the shooter. Butler claims error due to the suggestive tactics employed by police for this identification. We agree. The analysis of error in an alleged photo identification is a two-step procedure:
1) Did the police employ an unnecessarily suggestive procedure in obtaining an out of court identification; 2) if so, considering all of the circumstances, did the suggestive procedure give rise to a substantial likelihood of irreparable misidentification.
Grant v. State, 390 So.2d 341, 343 (Fla. 1980), cert. denied, 451 U.S. 913, 101 S.Ct. 1987, 68 L.Ed.2d 303 (1981).
In the instant case, police officers told the witnesses that the perpetrator was in the photo lineup. Also, in that lineup only the defendant wore distinctive clothing which had been described by the witnesses at the scene. Additionally, the defendant's picture had a different background because of the camera used. Finally, one of the witnesses who selected two pictures was required by officers to narrow her choice to one. Such procedures have been held to require reversal. See Henry v. State, 519 So.2d 84 (Fla. 4th DCA 1988).
Furthermore, the circumstances surrounding the shooting raise substantial doubt as to the witnesses' ability to correctly identify the perpetrator. These witnesses had only seconds to view the shooter as their vehicle passed the scene while running a red light. At the time of the incident, both witnesses stated that they could identify the perpetrator only if he was presented within minutes of the occurrence. Neither witness could describe the shooter's facial features. The car's passenger testified that the driver's vision was blocked in part by his car's rear panel. The driver testified that upon viewing the incident the passenger became hysterical. The passenger also claimed her vision was focused on the victim who she thought she recognized, rather than the shooter. Thus, we conclude that given the unnecessarily suggestive identification procedure employed which so tainted the lineup, and considering the difficulties of identification during the commission of the crime, there existed a substantial likelihood of irreparable misidentification.
Accordingly, we reverse the judgment and sentence and remand for a new trial.