6 So.3d 688 (2009)
Alan HEDRICK, Appellant,
v.
STATE of Florida, Appellee.
No. 4D07-4752.
District Court of Appeal of Florida, Fourth District.
March 18, 2009.
Rehearing Denied May 6, 2009.
*689 John M. Weinberg, Fort Lauderdale, for appellant.
*690 Bill McCollum, Attorney General, Tallahassee, and Heidi L. Bettendorf, Assistant Attorney General, West Palm Beach, for appellee.
PER CURIAM.
The defendant appeals a trial court order that denied his Florida Rule of Criminal Procedure 3.850 motion for post-conviction relief after holding an evidentiary hearing on two of the claims. We affirm, but write to address an ever-increasing problem facing trial and appellate courts abuse of the post-conviction relief process.

Factual and Procedural Background
The defendant was convicted after jury trial of first-degree felony murder, burglary of a dwelling with an assault or battery, and two counts of aggravated battery. The court sentenced the defendant to life in prison on the murder and burglary convictions and fifteen years in prison on the aggravated battery counts. We affirmed the convictions on direct appeal. Hedrick v. State, 848 So.2d 333 (Fla. 4th DCA 2003).
The evidence of the defendant's participation in the savage, home-invasion attack that resulted in the death of one of the three victims was overwhelming. The attack occurred after Stanley Grontkowski's son and some of his friends stole marijuana from the victims' home. Thereafter, the victims directed an individual to accost the boys. The boys were beaten up and Grontkowski's son suffered a broken nose.
In retaliation, Grontkowski gathered a group of men, including the defendant, and organized a plan to exact revenge on the victims. A member of the group cut the phone line to the victims' home. The men knocked on the door and then forced their way into the home, brutally beating the victims with a two-by-four, golf club, and baton-like weapon, which they had brought for that purpose. One of the victims died from massive head injuries suffered in the attack. Numerous witnesses testified that the defendant was a willing participant in the plan and the attack.
After the crime, three of the attackers, Grontkowski, the defendant, and Charles "Chip" Alienello, went to a hotel room and celebrated by drinking beer. Police, who had been investigating the bloody crime scene and were already aware that Grontkowski was involved in the attack, learned of the defendants' location and confronted them early the next morning. Two assistant state attorneys were called to the hotel to assist the officers by overseeing the collection of evidence.

The Post-conviction Filings
On January 10, 2005, the defendant filed a pro se 109-page, post-conviction motion, excluding exhibits, which raised about 24 claims for relief. He then filed a supplemental motion raising additional allegations and more claims. Judge Schack entered a detailed order explaining the basis for summarily denying each of the claims. Judge Schack ordered an evidentiary hearing on two claims: (1) counsel was ineffective in permitting the defendant to remain shackled during the trial, preventing him from walking around the courtroom and viewing exhibits; and (2) counsel was ineffective in failing to object to the co-defendants appearing in shackles and prison garb when the state used them to demonstrate the relative heights of the attackers.
Then, through post-conviction counsel, the defendant filed a supplemental motion raising three more claims. These claims were summarily denied as well. In total, the defendant raised more than thirty claims in more than 130 pages of type-spaced text, not including the hundreds of *691 pages attached as exhibits.[1] Many of the claims in the abusive motion accused assistant state attorneys of misconduct because they were present at the hotel during the investigation and one of them wielded a gun provided by a police officer before the attackers were confronted. The motions make many speculative, unfounded and paranoid allegations that the prosecutors, several defense attorneys, and the trial judge conspired to manipulate records.

Abusing the Process of Post-Conviction Relief
The laudable goals of post-conviction relief are lost when defendants abuse the process. The pro se motions filed in this case were clearly abusive. Thirty claims in more than 130 pages of type-spaced text, not including the hundreds of pages attached as exhibits, created a legal forest in which even a valid claim could easily be lost.
Trial courts have discretion to impose reasonable page limits on motions for post-conviction relief. See Gidney v. State, 925 So.2d 1076 (Fla. 4th DCA 2006) (commenting on an estimated 250-page, postconviction relief motion); Schwenn v. State, 958 So.2d 531 (Fla. 4th DCA 2007) (trial court has authority to place page limitations on post-conviction filings and 50 pages is a reasonable benchmark). Even post-conviction motions filed in death penalty cases in Florida are subject to a 75-page restriction. Fla. R.Crim. P. 3.851(e)(1).
We urge the Supreme Court of Florida and the Criminal Procedure Rules Committee to consider amending Rule 3.850 to provide a reasonable page restriction on post-conviction motions filed in non-capital cases. Other states have recognized the problems caused by abusively lengthy post-conviction motions and have implemented such page restrictions. Sanders v. State, 352 Ark. 16, 98 S.W.3d 35, 39 (2003) (discussing a long-standing rule limiting post-conviction pleadings to ten pages without leave of court); State v. Leiser, 294 Wis.2d 695, 717 N.W.2d 852 (Wis.Ct. App.2006) (describing a 20-page limitation on post-conviction motions implemented by trial court local rule).
Post-conviction litigants need to understand that, when seeking post-conviction relief, less is more. A legitimate claim that may merit relief is more likely to be overlooked if buried within a forest of frivolous claims. In post-conviction proceedings, the search for injustice is like the search for a needle in a haystack. See Brown v. Allen, 344 U.S. 443, 537, 73 S.Ct. 397, 97 L.Ed. 469 (1953) (Jackson, J., concurring) (observing that one "who must search a haystack for a needle is likely to end up with the attitude that the needle is not worth the search"). The needle is far more difficult to find the larger the haystack. Movants and the criminal justice system would be well-served by a rule that requires more careful consideration of the post-conviction claims, limiting them to serious, cognizable errors. A page limitation would hopefully lead movants to carefully construct their claims and discourage frivolous claims.
Rule 3.850 was intended to provide relief for a very narrow class of serious errors that could not be corrected on direct appeal. Ives v. State, 993 So.2d 117, 121 (Fla. 4th DCA 2008). See Baker v. State, 878 So.2d 1236, 1239-1240 (Fla.2004) (discussing the history of Rule 3.850).
*692 Instead, convicted defendants now file Rule 3.850 and 3.800(a) motions as a matter of course in almost every case. In many instances, the movant persists in filing successive motions. See Fla. R.Crim. P. 3.850(h). An already burdened, and under-financed, criminal justice system is further constrained by the increasing number of frivolous, abusively lengthy, and time-consuming post-conviction motions. Rules that help limit the filing of frivolous claims would reduce the amount of "hay" in the justice system, so the "needle" of injustice is easier to find.
The legislature has provided a mechanism for courts to sanction abusive post-conviction litigants by referring them to prison authorities for disciplinary proceedings. § 944.279(1), Fla. Stat. (2008). However, disciplinary procedures may not be effective to deter those serving life sentences without eligibility for parole. Sometimes the sanction of dismissal and refusal to accept further pro se filings from the abusive litigant is the only efficacious remedy to conserve the judiciary's limited resources. See State v. Spencer, 751 So.2d 47 (Fla.1999). We now address the substance of the defendant's numerous claims.

Summarily Denied Claims
In his initial brief, the defendant's post-conviction counsel makes a conclusory argument that the trial court should not have summarily denied the numerous claims raised in these motions. Counsel attempts to list all of the defendant's claims, but notes that, if he has missed some, this court should reverse the denial of those claims as well. We find this conclusory argument is insufficient to merit relief in this appeal, and these claims are deemed waived. Doorbal v. State, 983 So.2d 464, 482-83 (Fla.2008).
Despite our finding that the claims were waived, we have reviewed them and determine that the defendant is not entitled to relief. Prosecutors did not engage in misconduct in this case and none of the claims demonstrate a reasonable probability that the outcome of the case would differ. Stancle v. State, 980 So.2d 619 (Fla. 4th DCA 2008) (explaining that where one prong of an ineffective assistance of counsel claim is not met, such as prejudice, a court need not address the other prong, i.e. whether counsel was deficient).

Motions to Disqualify
Counsel also argues that Judge Fennelly should have granted a series of motions to disqualify that were filed by the defendant and his post-conviction counsel during these proceedings. Judge Fennelly was the trial judge, but was retired at the time the post-conviction motion was filed. Judge Schack entered the order summarily denying the vast majority of the claims, but requiring an evidentiary hearing on two of them. Judge Schack later recused himself from presiding over the evidentiary hearing, and Judge Fennelly, who was recalled and assigned to the case, heard and ruled on the claims argued at the evidentiary hearing.
The defendant argues that he was entitled to have Judge Schack's order summarily denying his claims reconsidered, but he did not move for reconsideration within the twenty-day period provided by rule. Fla. R. Jud. Admin. 2.330(h). The defendant also argues that Judge Fennelly should have granted a November 2004 motion to disqualify and a series of renewed motions to disqualify. The initial motion to disqualify was untimely and legally insufficient and did not require disqualification.
A motion to disqualify a trial court judge must be filed within ten days after discovery of the facts constituting the grounds for the motion and must be promptly presented to the court for a ruling. Fla. R. *693 Jud. Admin. 2.330(e). The defendant's motion was based on his speculative and unfounded allegations of official misconduct and also complained that Judge Fennelly demonstrated bias through his rulings on pretrial motions. These claims are untimely and, because they relate to matters which occurred at trial, procedurally barred. Rodriguez v. State, 919 So.2d 1252, 1274 (Fla.2005) (explaining that "any claim of judicial bias during trial should have been raised on direct appeal and is procedurally barred in this post-conviction proceeding").
The defendant's subjective and unreasonable fear that Judge Fennelly was involved in a conspiracy against him was legally insufficient to warrant disqualification. Fischer v. Knuck, 497 So.2d 240, 242 (Fla.1986) (explaining that fear of judicial bias must be objectively reasonable).
In his Third Renewed Motion to Disqualify, post-conviction counsel argued that Judge Fennelly's failure to have ruled on the prior motions within thirty days required automatic disqualification. Fla. R. Jud. Admin. 2.330(j); Schisler v. State, 958 So.2d 503 (Fla. 3d DCA 2007) (applying the bright-line rule that was created following the decision in Tableau Fine Art Group, Inc. v. Jacoboni, 853 So.2d 299, 302-03 (Fla.2003)).
A motion is deemed granted under Rule 2.330(j), however, only if the trial court has failed to rule within thirty days after service of the motion as required by Rule 2.330(c). None of the motions to disqualify were ever served on the judge as required by Rule 2.330(c). Thus, the motion was not deemed automatically granted by operation of the rule. See Johnson v. State, 968 So.2d 61, 63 n. 2 (Fla. 4th DCA 2007). The defendant was not entitled to have his meritless claims considered by another judge.

Claims Denied After Evidentiary Hearing
The defendant argues that trial counsel was ineffective in not seeking to have his shackles removed during trial. It is undisputed that the jury never saw the defendant in shackles. The defendant admitted at the evidentiary hearing that the jury never saw him in shackles. Nevertheless, post-conviction counsel argues that because the defendant had to remain seated at counsel's table and could not move about the courtroom to view evidence presented on a projection screen, he appeared disinterested and aloof and was presented as a real life version of "Lenny" from John Steinbeck's Of Mice and Men. This fanciful argument lacks merit.
Considering the overwhelming evidence of guilt, no reasonable probability exists that the defendant's inability to walk around the courtroom to view exhibits affected the jury's verdict. Stancle, 980 So.2d at 621.
[T]here is no reason for a court deciding an ineffective assistance claim ... even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.
Strickland v. Washington, 466 U.S. 668, 697, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
*694 In addition, defense counsel testified that he discussed the decision not to have the defendant get up to view the projections of the images during trial. The trial court concluded that this decision was tactical as counsel wanted to downplay the significance of the images. The trial court found counsel's testimony regarding this strategic decision credible. A trial court's factual determinations following an evidentiary hearing on a post-conviction motion are entitled to deference and should not be disturbed if they are supported by competent substantial evidence. Jeantilus v. State, 944 So.2d 500 (Fla. 4th DCA 2006).
The second aspect of this point is the court's denial of the defendant's claim that counsel should have objected to the co-defendants appearing at trial in shackles and prison garb. The co-defendants were brought into the courtroom during the testimony of one of the victims, who identified the defendant as the tallest of the attackers. The defendant was much taller than the co-defendants and the state used the co-defendants as a demonstrative exhibit. The defendant's motion alleged that the jury may have perceived him as guilty by association because the co-defendants' appearance in prison garb and shackles indicated that they were in custody.
Trial counsel testified that he felt this actually helped the defendant because the state was relying on prisoners to make its case. The trial court denied the motion because the co-defendants were state witnesses, essentially used as a demonstrative exhibit. The court found persuasive Morgan v. State, 818 So.2d 1163 (Miss.2002), which found that a defendant was not prejudiced by the appearance of state witnesses in shackles.
The defendant cannot meet the prejudice prong so it is unnecessary to determine whether counsel performed deficiently. Nevertheless, counsel's decision not to object was reasonable. There was no question that the co-defendants were involved in the attack in this case. The defendant's theory of defense was that he was merely present and did not participate in the beatings. The fact the co-defendants were guilty was a foregone conclusion as far as the defense was concerned. The defense theory was not (nor could it reasonably have been) that the beatings did not occur or that the police did not know who committed the beatings. The defendant wanted to play down his involvement in the beatings. The co-defendants' appearance in prison garb had no bearing on the defense.
Multiple witnesses, who were present throughout the evening when the attack was planned and executed, testified to the defendant's willing involvement. The defendant suggested that the attackers bring a gun, and he was seen grabbing a golf club as they left for the victims' home. Two witnesses who waited outside in the car during the attack testified at trial that they saw the defendant enter the house with the rest of the attackers. He exited at the same time as the rest of the attackers. One of the victims testified at trial and identified the defendant as one of the attackers who actively beat the victims.[2] The evidence of the defendant's guilt as a principal and accessory to the felony murder, and the other offenses, was overwhelming. None of the claims raised by the defendant alone, or cumulatively, present any compelling ground for ordering a new trial in this case.

Conclusion
The defendant's abusively lengthy post-conviction filings, which raised unfounded *695 claims of prosecutorial misconduct and paranoid allegations of a vast conspiracy by government officials, were wholly without merit. Based on the overwhelming evidence of guilt presented at trial, the defendant cannot show prejudice that would entitle him to post-conviction relief. The trial court correctly denied all of the claims. This case presents a compelling reason for the Supreme Court of Florida to consider an amendment to the rules of criminal procedure to provide a reasonable page limitation for post-conviction motions in non-capital cases.
Affirmed.
HAZOURI and MAY, JJ., concur.
FARMER, J., concurs specially with opinion.
FARMER, J., concurring specially.
I concur in the opinion for the Court and write only to append a personal note.
Post-conviction relief was meant to be infrequently used, coming as it does after a trial and a full appeal, whose processes are designed to eliminate errors in conviction and punishment. But after Clarence Earl Gideon filed his hand-drawn petition for post-conviction relief in the United States Supreme Court[3] and was instrumental[4] in fundamentally changing criminal procedure in this country, Judges shrink in horror at the prospect of missing that rare entreaty with serious merit.
The opinion makes clear that routine post-conviction filings have since become customary in all serious felony cases. Camus once wrote that there is no limit to the fancies indulged by the captive. We are ever being reminded of his truth in these petitions. A large number are wretchedly overwrought and difficult or impossible to navigate. A very high majority of them are facially meritless. As a consequence Judges keep searching for reliable routines for realizing that singular snippet of truth hidden deep in a mountainous mire of post-conviction excess, the rare one justly demanding relief.
I doubt the exhortation to prisoners to do more with less will reduce our mountain. And so I agreeunhappilythat some change in the post conviction statutes and rules is perhaps warranted.
NOTES
[1] In addition to all the above, the defendant also filed a 34-page "Motion to Set Aside Fraudulent Judgment" which repeated many of these same spurious attacks against his conviction and attempted to raise new claims. The motion was denied as successive. Fla. R.Crim. P. 3.850(f).
[2] The third victim died before trial from causes unrelated to this attack.
[3] Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).
[4] With some assistance, to be sure, from Abe Fortas.