PER CURIAM.
Keith Sirota appeals the denial of his Rule 3.850 motion for posteonvietion relief. On appeal, Sirota presents argument as to only three issues. The unargued issues are waived. Hammond v. State, 34 So.3d 58 (Fla. 4th DCA 2010); Hedrick v. State, *315 6 So.3d 688, 692 (Fla. 4th DCA 2009) (citing Doorbal v. State, 983 So.2d 464, 482-83 (Fla.2008)).
We affirm without discussion thé denial of all claims except appellant’s claim that ineffective assistance of counsel regarding the maximum penalty caused him to reject a favorable plea offer. As to this claim, we are bound by Morgan v. State, 991 So.2d 835 (Fla.2008), to reverse and remand for further proceedings.[1] We certify to the Florida Supreme Court a question of great public importance regarding the scope and proper application of Morgan following two recent decisions of the Supreme Court of the United States which prescribe the minimum requirements of the Sixth Amendment as to these types of claims. Lafler v. Cooper, — U.S. -, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012); Missouri v. Frye, — U.S. -, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012).

Factual Background

In an internet chatroom called “I Love Older Men,” Sirota contacted a police officer who was posing as a thirteen-year-old girl and over a period of months repeatedly discussed in graphic detail his desire to have sex with her. He sent her photographs of his erect penis and was arrested when he went to meet the girl at a church. He confessed to police.
Sirota’s defense at trial was that he believed he was roleplaying with an adult. He testified about his depression and how it led him to engage in sexual fantasies regarding older women because he had always fantasized about sex with his mother. He alleged that he went into the “I Love Older Men” chatroom after he could not get into the “I Love Older Women” chatroom which he frequented but which was full on that particular day. He alleged that he went into the “I Love Older Men” chatroom because he “wondered if women role-play and act out these fantasies that men do.”
In 2007, a jury convicted Sirota of soliciting a child under sixteen years of age via the internet and three counts of transmission of material harmful to a minor. The court sentenced him to a composite sentence of five years in prison followed by ten years of sexual offender probation. This court affirmed the conviction but remanded for correction of a scrivener’s error. Sirota v. State, 977 So.2d 700 (Fla. 4th DCA 2008).
In the postconviction claim at issue, Si-rota argued that trial counsel misadvised him causing him to proceed to trial with a prohibited “diminished capacity” defense. In support of his defense, Sirota was permitted to testify at trial about events in his life that had caused him to suffer from depression and that his depression had led to destructive behavior such as participating in roleplaying fantasies involving older women in internet chat rooms. The trial court ultimately ruled, however, that Siro-ta could not present testimony from his therapist regarding Sirota’s depression having led to his sexual fantasies and role-playing. Counsel argued that the therapist’s testimony was relevant to Sirota’s state of mind and whether his depression caused him to slip further into his sexual fantasies. The court determined that the testimony was inadmissible evidence of di *316 minished capacity and that Sirota had failed to show how the testimony was otherwise relevant to an issue in the case.
The trial court’s refusal to allow this testimony was argued on direct appeal and affirmed. Sirota alleges that counsel led him to believe the therapist’s testimony would be admissible and that any refusal to admit the testimony would lead to automatic reversal on appeal. He also claims that counsel told him that the maximum sentence he could receive after trial was 3.5 years in prison and that he relied on these statements in rejecting a plea offer for five years of probation. He claimed generally that counsel misled him to believe that “he had a viable defense, viable evidence, viable witnesses, strong issues on appeal, and the risk of only having to face and serve 3.5 years in state prison should he lose.” He claimed that he would have accepted the alleged offer for five years of probation if properly advised.
In its response to this court’s order to show cause, the State contends that the claim was not sufficiently pleaded because Sirota did not allege specifics regarding the alleged plea offer, such as the precise terms of the offer, when the offer was allegedly made, or whether the offer had an expiration date. The State argues that, even if the claim was sufficiently pleaded, the record refutes the allegation that counsel asserted a prohibited diminished capacity defense at trial. The defense at trial was that Sirota lacked the specific intent to communicate with a minor because he believed he was roleplaying with an adult pretending to be a minor. The State’s response does not address appellant’s allegation that his attorney misadvised him about the maximum sentence he could receive if convicted after trial.

Analysis

Florida courts have recognized claims of ineffective assistance of counsel where an attorney’s specifically-described deficient performance results in the loss of a favorable plea offer which the defendant would have accepted. To state a sufficient claim, the defendant must establish: “(1) counsel failed to convey a plea offer or misinformed the defendant concerning the possible sentence he faced, (2) the defendant would have accepted the plea but for counsel’s failures, and (3) acceptance of the plea would have resulted in a lesser sentence than was ultimately imposed.” Morgan v. State, 991 So.2d 835, 839-40 (Fla.2008). Pursuant to Cottle v. State, 733 So.2d 963, 969 (Fla.1999), to establish prejudice, a defendant was not required to show that the trial court would have accepted the plea arrangement.
In two recent decisions, the Supreme Court of the United States recognized that the Sixth Amendment right to counsel encompasses a right to effective assistance of counsel during plea bargaining. In Lafler v. Cooper, — U.S. -, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012), an attorney’s bad advice about the merits of a defense caused the defendant to reject a favorable plea offer, and the defendant received a harsher sentence following a conviction after jury trial. The defendant in Cooper had corresponded with the trial court and expressed a willingness to admit guilt and accept the prosecutor’s plea offer, but rejected the offer in open court apparently because counsel had convinced the defendant to do so. Id. at 1383. The parties in Cooper stipulated that counsel had performed deficiently in advising defendant about the plea offer, and the Court decided only whether prejudice to state a sufficient claim could be established. Id. at 1384. The Court did not explore whether counsel’s conduct truly amounted to constitutionally deficient performance in that case. Id.
*317 The Court recognized the sufficiency of the ineffective assistance claim in this situation, but held that the proper remedy was not necessarily to compel the prosecutor to re-extend the plea offer. The Court explained that, where the only difference between the lost plea offer, and the result after trial, is in the severity of the sentence, the court may conduct an evidentia-ry hearing to determine whether the defendant would have accepted the offer; and if so, the court then has discretion to impose the offered sentence, the sentence imposed after trial, or anything in between. Id. at 1389. Where resentencing is not alone sufficient to remedy the “constitutional injury,” such as where the lost offer involved lesser offenses, the proper remedy “may be” to require the State to re-extend the offer. Id. The trial court then has discretion to accept the plea arrangement or allow the conviction to remain undisturbed.
In a companion case, Missouri v. Frye, — U.S. -, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012), the attorney failed to convey a plea offer which then expired, and the defendant later entered an open plea and received a harsher sentence. The Court recognized the sufficiency of the ineffective assistance of counsel claim in this posture, but clarified what a defendant must prove to establish prejudice under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In addition to showing a reasonable probability that the defendant would have accepted the offer, the defendant must demonstrate “a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law.” Frye, 132 S.Ct. at 1409. In Frye, the Court recognized that it was up to the states to determine whether to permit a prosecutor to withdraw a plea offer once it has been accepted by a defendant or to permit a court to reject a plea deal struck by the state and the defendant. Id. at 1410-11.
Frye involved a written plea offer with a deadline for acceptance. Frye, 132 S.Ct. at 1404. Cooper involved a formal plea offer conveyed to the defendant on the record in open court at a pretrial conference. Cooper v. Lafler, No. 06-11068, 2009 WL 817712, at *3 (E.D.Mich. Mar. 26, 2009). The Court in Frye limited its holding to the specific facts of that case. The court held that generally “defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. Any exceptions to that rule need not be explored here, for the offer was a formal one with a fixed expiration date.” 132 S.Ct. at 1408 (emphasis added).
The Court in Frye noted that Missouri, like other states, permits a prosecutor to cancel a plea offer to which the defendant has agreed. Id. at 1410. Thus, the defendant must show, under the circumstances, an objectively reasonable probability that the prosecutor would not have canceled the plea agreement and that the trial court would have accepted it. Id. The Court remanded Mr. Frye’s case to the Missouri appellate court to determine whether Frye showed a reasonable probability that the prosecutor would have adhered to the agreement and that the trial court would have accepted it. Id. at 1411. The Court indicated there was strong reason to doubt that the prosecutor, and the trial court, would have adhered to the agreement where Mr. Frye had been arrested for another driving while license suspended charge while the offer remained open. Id.
The Court in Frye recognized the potential for late, frivolous, or fabricated post- *318 conviction claims about lost plea offers. The Court explained that prosecutors and courts could adopt measures to guard against such claims:
First, the fact of a formal offer means that its terms and its processing can be documented so that what took place in the negotiation process becomes more clear if some later inquiry turns on the conduct of earlier pretrial negotiations. Second, States may elect to follow rules that all offers must be in writing, again to ensure against later misunderstandings or fabricated charges. See N.J. Ct. Rule 8:9-1 (b) (2012) (“Any plea offer to be made by the prosecutor shall be in writing and forwarded to the defendant’s attorney.”). Third, formal offers can be made part of the record at any subsequent plea proceeding or before a trial on the merits, all to ensure that a defendant has been fully advised before those further proceedings commence.
Id. at 1409 (emphasis added). The above-emphasized language indicates that courts may limit postconviction claims of this type to “formal plea offers” which means “that [the offer’s] terms and its processing can be documented.” Id. The Court explained that, through its decision, it has “established the minimum requirements of the Sixth Amendment as interpreted in Strickland, and States have the discretion to add procedural protections under state law if they choose.” Id. at 1411.
In Florida, no plea offer or negotiation is binding until formally accepted by the trial court. Fla. R.Crim. P. 8.172(g); Hurt v. State, 82 So.3d 1090 (Fla. 4th DCA 2012). The State can rescind an offer at any time up until formal acceptance by the court — even if the defendant has conveyed his acceptance. Nothing in Florida law presently requires plea offers to be in writing, nor do the rales require a pre-trial conference where plea offers must be made on the record.

Sirota’s Case

We first address appellant’s claim that counsel performed deficiently in advising him to proceed to trial with a diminished capacity defense. We agree with the State that the record conclusively shows that counsel did not assert directly a diminished capacity defense at trial. Evidence of diminished mental capacity, not amounting to legal insanity, is inadmissible. Chestnut v. State, 538 So.2d 820 (Fla.1989).
Sirota’s claim is really that he involuntarily proceeded to trial because counsel misled him to believe that his therapist would be permitted to testify in support of his lack-of-intent defense and that he would win on appeal if the court did not allow the expert testimony. The trial court prohibited the testimony, concluding that it amounted to inadmissible evidence of diminished capacity. This court found no reversible error on direct appeal.
Sirota does not establish the deficiency prong of a Strickland claim. In Morgan, the Florida Supreme Court held that mere allegations that an attorney advised the movant to reject a plea offer are insufficient to warrant an evidentiary hearing; “[s]ome specific deficiency on the part of counsel must be alleged.” 991 So.2d at 841. Morgan had not alleged any deficient performance by counsel. Counsel merely provided an opinion to Morgan regarding whether he should accept the plea and the chance of success at trial: “[t]he mere fact that Morgan did not prevail at trial does not translate into misadvice.” Id.
Similarly, in this case, Sirota alleges merely that counsel opined that the court would admit testimony from his therapist regarding Sirota’s depression leading to sexual fantasies and roleplaying — which *319 would support his defense that he believed he was roleplaying with an adult — and that failure to allow such testimony would be reversible error. Sirota has not identified any clear law on the issue with which counsel should have been aware. Counsel’s opinion was not obviously wrong. The fact that the trial court disagreed with counsel’s argument does not translate into deficient performance.
An attorney is strongly presumed to have provided effective assistance, and when considering counsel’s performance, a reviewing court must make every effort to avoid the distorting effects of hindsight. Strickland, 466 U.S. at 688-90, 104 S.Ct. 2052. Judicial scrutiny of counsel’s performance must be highly deferential. Id. The object is not to grade counsel’s performance.
The Constitution does not guarantee perfect, error-free counsel. The question is whether counsel’s performance was so unreasonable that it falls below the minimum standard of competence required by the Sixth Amendment. The burden is on the movant to establish that counsel made such serious errors that counsel’s representation fell “outside the wide range of professionally competent assistance” and that the defendant therefore lacked the assistance of counsel contemplated by the Constitution. Id. at 690.
Sirota has not overcome the strong presumption to the contrary and has not established that counsel’s opinion regarding the admissibility of the therapist’s testimony fell outside the wide range of reasonably competent assistance. At best, he can show that counsel’s opinion proved mistaken, not that he was unconstitutionally denied the assistance of counsel.
As to his allegation that counsel led him-to believe that refusal to admit the therapist’s testimony would be reversible error, to establish Strickland prejudice, a movant must show a reasonable probability that the outcome of the proceeding would differ. The focus of the prejudice inquiry is on the outcome of the trial, not on the possibility for reversal on appeal. See Carratelli v. State, 961 So.2d 312, 322 (Fla.2007). Here, we find no reasonable probability that the outcome of the trial would have differed even if the trial court had admitted the therapist’s testimony. Sirota’s alleged reliance on the possibility of receiving a new trial on appeal is too speculative. He is not entitled to an evi-dentiary hearing on this aspect of his claim.
This court has refused to extend the holding of Morgan which recognizes the sufficiency of specifically-pleaded claims that counsel performed deficiently in (1) advising a defendant to reject a plea offer, (2) misadvising the defendant about the maximum penalty faced, or (3) failing to convey a plea offer. Hurt, 82 So.3d at 1092-93. Sirota’s allegation regarding counsel’s advice about the admissibility of testimony from his therapist does not allege one of the types of claims recognized in Morgan. Sirota does not allege that his attorney advised him to reject the offer. Unlike the situation in Cooper, nothing in this record suggests that Sirota was willing to accept the plea offer, but was convinced not to do so by bad advice from counsel.
The motion, however, also alleged that counsel misadvised him that the maximum penalty he faced after trial was only 3.5 years. Sirota was actually facing a far greater penalty and received five years in prison followed by ten years of probation once he was convicted after trial. The State did not identify anything in the record to refute this allegation. Accepting this sworn factual representation as true, as we must in this posture, this aspect of *320 the claim appears sufficient under Morgan. We are bound to remand for further proceedings.
However, the recent decisions in Cooper and Frye have changed the Sixth Amendment analysis that applies on remand. We perceive the Florida Supreme Court’s decisions in Morgan and Cottle to be based solely on an interpretation of the requirements of the Sixth Amendment to the Constitution of the United States. The Supreme Court of the United States has now clarified that to establish Strickland prejudice as to this type of claim, the movant must prove that the prosecutor would not have withdrawn the offer and that the agreement would have been accepted by the court. Frye, — U.S. -, 132 S.Ct. at 1410. We believe that Cottle ’s holding to the contrary has been overruled. Although we are bound to follow Morgan, the recent United States Supreme Court decisions have called its holding into question.
In Strickland, the Court cautioned against allowing criminal cases to routinely be followed by a “second trial” of counsel’s performance. 466 U.S. at 690, 104 S.Ct. 2052. We do not believe that evidentiary hearings should be held regarding every allegation that an attorney gave bad advice regarding an alleged plea offer. The circumstances surrounding the timing and substance of offers, and the reasons for counsel’s advice and for a prosecutor extending the offer, will likely be present in infinite variety. Criminal defense attorneys, and prosecutors, should not be routinely haled into court for postconviction hearings to reconstruct the circumstances under which a plea offer was made and the reasons why the alleged advice was given.
The burden remains on the mov-ant to allege circumstances to establish a sufficient claim, and the bar for asserting a claim sufficient to require an evidentiary hearing has been set high. We agree with federal courts that, to establish a prima facie ease for an evidentiary hearing as to these types of claims, the defendant’s statement that he or she would have accepted the offer is not alone enough. The movant has the burden of establishing a prima facie case for an evidentiary hearing.
Prima facie evidence may include a petitioner’s own statement, as was offered here; however, in order for the statement to be sufficiently credible to justify a full hearing, it must be accompanied by some “objective evidence,” such as a significant sentencing disparity, that supports an inference that the petitioner would have accepted the proposed plea offer if properly advised.
Raysor v. U.S., 647 F.3d 491, 495 (2d Cir.2011) (citing Puglisi v. U.S., 586 F.3d 209, 215-16 (2d Cir.2009)).
Both Cooper and Frye involved “formal plea offers” which could be independently verified from the record. Courts could guard against frivolous or fabricated claims regarding allegedly lost plea offers by limiting evidentiary hearings to situations involving “formal plea offers,” that is, where the offer was made in writing or on the record in open court.
We make one final observation regarding proceedings on these types of claims. Hindsight, as they say, is 20-20. We suspect that many postconviction motions seeking to accept lost plea offers will be motivated, at least in part, by the benefit of hindsight. Having gambled on the possibility of acquittal at trial or that a better offer might be forthcoming, and now knowing the outcome and that the sentence turned out to be more harsh, the defendant will have great incentive to seek to resurrect and accept a lost offer and little disincentive from attempting to do so. *321 Just as an attorney’s performance should not be distorted by the lens of hindsight, a court considering allegations that a defendant would have accepted a lost plea offer should make every effort to consider the totality of the circumstances as they existed to the defendant at the time of the offer.
We certify the following question of great public importance to the Florida Supreme Court:
DO THE DECISIONS IN LAFLER V. COOPER, - U.S. -, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012), AND MISSOURI V. FRYE, — U.S. -, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012), WHICH ESTABLISH THE MINIMUM REQUIREMENTS OF THE SIXTH AMENDMENT, SUPERSEDE THE DECISIONS IN MORGAN V. STATE, 991 So.2d 835 (Fla.2008), AND COTTLE V. STATE, 733 So.2d 963, 969 (Fla.1999), AS TO THE PLEADING REQUIREMENTS AND REMEDY FOR AN INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM REGARDING A LOST PLEA OFFER? IF SO, ARE EVIDENTIARY HEARINGS ON SUCH CLAIMS LIMITED TO CIRCUMSTANCES INVOLVING “FORMAL PLEA OFFERS,” THAT IS, VERIFIABLE OFFERS THAT ARE EITHER IN WRITING OR MADE ON THE RECORD IN OPEN COURT?

Affirmed in part, reversed in part and remanded for further proceedings. Question certified.

MAY, C.J., STEVENSON and TAYLOR, JJ., concur.

. Appellant in his reply brief asks that this court grant him leave to amend his motion to add support to one of his claims with alleged newly-discovered evidence. Appellant's claim of newly-discovered evidence was not raised in the court below and is not properly before this court on appeal. Appellant is not precluded by this decision from filing a postcon-viction motion asserting that the alleged newly-discovered evidence provides an exception to the time limitation. Fla. R.Crim. P. 3.850(b)(1). We express no opinion as to the merits of such a claim.