814 So.2d 1159 (2002)
Russell WERLEY, Appellant,
v.
STATE of Florida, Appellee.
No. 1D01-1135.
District Court of Appeal of Florida, First District.
April 16, 2002.
*1160 Barbara J. Busharis, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General, and Giselle Lylen Rivera, Assistant Attorney General, Tallahassee, for Appellee.
POLSTON, J.
Appellant Russell Werley was charged and convicted of aggravated battery with a deadly weapon and sentenced as a prison releasee reoffender to a mandatory sentence of 15 years. Appellant allegedly battered his wife, Mrs. Werley, by striking her in the face with a beer bottle at home. A week after the event, Mrs. Werley tried to persuade the State Attorney's office to drop the charges. In statements made at the State Attorney's office, and later at trial, Mrs. Werley recanted her statements within a 911 call to Leon County Sheriff's Department that "my husband is beating up on me," recanted her statement to the officers responding to her 911 call that she was struck in the face with a beer bottle while in bed, and recanted her statement in the petition for a domestic violence injunction against Appellant that she filed the afternoon of the event, indicating that Appellant struck her in the face with a beer bottle. See generally Williams v. State, 714 So.2d 462, 463 (Fla. 3d DCA 1997)("As has become lamentably common in cases of domestic violence," the victim's trial testimony was "diametrically contrary to her original statements to the police.").
*1161 Appellant argues that the trial court: (i) erred by admitting the 911 tape as an excited utterance, (ii) fundamentally erred by not instructing the jury in response to its question whether hands are deadly weapons under Florida law, (iii) erred by allowing the State to present evidence of Appellant's six prior felony convictions to impeach the defendant, based on Mrs. Werley's testimony of Appellant's statements when the event occurred, and (iv) abused its discretion in denying Appellant's motion for a new trial. We affirm.

I. 911 Tape
Appellant argues that the 911 tape should not have been admitted as an excited utterance because Mrs. Werley placed the call over an hour after the alleged battery and after she had time to reflect on several ongoing disagreements with her husband. See § 90.803(2), Fla. Stat. (2000)(a "statement or excited utterance relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is a hearsay exception).[1]
In the 911 call, Mrs. Werley told the operator that her husband was "beating up on me" and that "if I don't get off the road, he will be coming to get me and beat me up some more." The first deputy sheriff responding to Mrs. Werley's 911 call testified that he found Mrs. Werley slightly running down the road from her house, she was upset and crying, and was holding a towel to her head with a considerable amount of blood on it. The second deputy sheriff responding to the call indicated that when he arrived, Mrs. Werley was shaken, had shortness of breath, and was "visibly frightened."
There is no bright-line rule of hours or minutes to determine whether the time interval between the event and the statement is long enough to permit reflective thought. Rogers v. State, 660 So.2d 237, 240 (Fla.1995). The trial court evaluated the facts and concluded that the State had established the predicate necessary to admit the 911 call as an excited utterance. The trial court did not abuse its discretion. See Williams, 714 So.2d at 466; Cotton v. State, 763 So.2d 437, 440-41 (Fla. 4th DCA 2000)("Whether the necessary state of mind is present for a court to admit a statement as an `excited utterance' exception is a preliminary fact for the trial court's determination"; the "standard of review is abuse of discretion"); Damren v. State, 696 So.2d 709, 713 (Fla.1997)(ruling that statements by witness were excited utterances; the trial court did not abuse its discretion in admitting the statements).

II. Are Hands A Deadly Weapon?
When the jury was deliberating, it sent the trial court a question: "If the defendant is believed to have struck Ms. Werley with his hands, do hands constitute a deadly weapon?" With the agreement of both counsel, the trial court declined to answer the jury's question and referred the jury back to the instructions on aggravated battery and battery. This issue was not preserved for review and is not fundamental. See Armstrong v. State, 579 So.2d 734, 735 (Fla.1991)("By affirmatively requesting the instruction he now challenges, Armstrong has waived any claim of error in the instruction. Any other holding would allow a defendant to intentionally inject error into the trial and then await the outcome with the expectation that if he *1162 is found guilty the conviction will be automatically reversed.").
Moreover, the trial court's ruling was not in error. See Brown v. State, 611 So.2d 540, 543 (Fla. 3d DCA 1992)(ruling that the trial court properly refused to give any further clarification to the jury's question during deliberation regarding whether a closed fist or use of a foot is considered a deadly weapon, and instead read the information to the jury and sent the instructions).

III. Admission of Prior Convictions
Appellant attempted to prove that an accident occurred rather than a battery. In opening statements to the jury, Appellant's counsel stated:
May it please the Court, counsel. Members of the jury. Good morning. We're here today because of an accident, and because of a gross overreaction to that accident.
. . .
[W]hen he [Appellant] was in the bathroom, he was washing his hands and washing his face, and she came up behind him. When he turned to get the towel, he whacked her in the face, and Ms. Werley will tell you that that's what happened that day, and it was an accident.
Now, when he turned around, he said I didn't know you were back there, I'm sorry. And he grabbed the towel, put it up to her nose, she got a bloody nose from this, and he held it up there and dabbed at it and she will tell you how he told her not to swallow the blood and brought her back and sat her on the edge of the bed and tried to help her with it.
On direct examination from the State, Mrs. Werley testified that her husband accidentally hit her in the face with either his elbow or a beer bottle when she was standing behind him in the bathroom. On cross-examination, she testified:
Q. And after this happened, you testified earlier that he tried to help you with the blood?
A. Yes, he did. When he turned around and he hit me, he said I'm sorry, and looked and checked me and said you're all right, so I went on back to bed, laid on the side of [the] bed, and he came in a few minutes later and sat on the edge of the bed and talked to me, and I felt wetness coming out of my nose so I jumped up, went back in the bathroom and I was bleeding from the nose. He came in there, grabbed a towel, wet it and wiped it off, and said whatever you do don't swallow your blood, because if it gets in your lungs it can kill you. And he said you will be all right. Don't breathe through your nose and it will clot up in a few minutes.
In response to Mrs. Werley's testimony regarding Appellant's statements to her, the trial court allowed the admission of Appellant's six prior felony convictions, pursuant to section 90.806(1), Florida Statutes (2001)("When a hearsay statement has been admitted in evidence, credibility of the declarant may be attacked and, if attacked, may be supported by any evidence that would be admissible for those purposes if the declarant had testified as a witness."). The trial court instructed the jury that the prior convictions should be considered only for the purpose of assessing the defendant's credibility of statements he made that were related by witnesses, and are not to be considered as proof of guilt for the charged offense.
Appellant argues that the statements made by Mrs. Werley were (i) not hearsay because they were "incidental" to prove the course of events rather than offered to prove the truth of the matter asserted in the statement, and (ii) not exculpatory *1163 hearsay that justifies impeachment with prior convictions.
We agree with the State that the statements were exculpatory and were offered for the truth that Appellant hit his wife accidentally. The defense counsel told the jury in opening statements that they would hear testimony from Mrs. Werley that it was an accident, and that Mr. Werley told her he was sorry and not to swallow her blood. That testimony was later elicited by the defense during the trial. Therefore, the trial court properly admitted the prior convictions. See Llanos v. State, 770 So.2d 725 (Fla. 4th DCA 2000)(ruling that, pursuant to § 90.806, trial court properly took judicial notice that defendant was on probation after defendant's hearsay statements, that he was sorry, were admitted into evidence upon defense counsel's cross-examination of the victim); 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 806.04[2][b], at 806-11,12 (Joseph M. McLaughlin ed., 2d ed. 2002)("A defendant who chooses not to testify but who succeeds in getting his or her own exculpatory statements into evidence runs the risk of having those statements impeached by felony convictions.").

IV. Motion For A New Trial
Appellant argues that the trial court erred by denying his motion for a new trial. The motion was based on the cumulative effect of the trial court's alleged erroneous rulings previously discussed. Because we affirm the trial court's rulings, we find no merit to this argument.
AFFIRMED.
WEBSTER and LEWIS, JJ., concur.
NOTES
[1] Mrs. Werley testified at trial that she placed the 911 call because she became angry and upset with her husband over a disagreement about unpacking boxes at their house after a recent move there, and that she wanted medical attention for her nose. Mrs. Werley was medically treated by the ambulance service responding to the 911 call, but she declined to go to the hospital.