924 So.2d 914 (2006)
Leroy Leon FISHER, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 5D05-722.
District Court of Appeal of Florida, Fifth District.
March 24, 2006.
*915 James S. Purdy, Public Defender, and Noel A. Pelella, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Bonnie Jean Parrish, Assistant Attorney General, Daytona Beach, for Appellee.
THOMPSON, J.
Leroy Leon Fisher, Jr. appeals his convictions for arson of a motor vehicle, arson of a dwelling, and arson resulting in serious bodily injury, claiming that the trial court erred by admitting evidence of his previous felony convictions and a photo lineup. We affirm.
On 7 September 2003, Willie King and his wife fought with Fisher's mother. That night, King parked his car near the bedroom window of his ground-floor apartment where he lived with his wife and children. In the early morning hours of 8 September 2003, King's wife woke him because there was a fire outside their bedroom window. King ran to another window and saw Fisher, whom he had known in the neighborhood for years. Fisher had a large drink cup in his hand, which he used to pour something on the fire burning outside King's house. Fisher saw King and ran away. King started to leave the apartment, but the front door was on fire. He returned to his bedroom to get his children out; as he did so, he fell on glass from a broken window, which cut his face and arms, required stitches, and caused scarring.
At the hospital, King and King's mother received threatening phone calls from Fisher, who had dropped his cell phone near King's car while committing the arsons. Fisher continued to make threatening calls, which were overheard by an investigator with King at the time. Eventually, Fisher stopped calling King and told his girlfriend, who paid for the phone, to cancel the phone contract.
King's car and apartment were damaged by the fire. A canine trained to detect accelerants signaled their presence near King's front door and car. Investigators also found a plastic container of charcoal lighter fluid and the plastic drink cup King had seen. Tests revealed the presence of accelerants at the front door and car and on the cup and lighter fluid container.
Two trial events are pertinent on appeal. First, the State introduced into evidence a photo lineup over objection. Fisher had not moved to suppress the photo. He objected that the lineup showed him in "jail blues." The State responded that the photo showed Fisher wearing a blue shirt, but nothing indicated that it was from jail. The court overruled the objection. King and the officer who prepared the lineup testified, without objection, that King had selected Fisher from the lineup.
The second issue arose from Fisher's cross-examination of a police investigator, where the following exchange occurred:
Q: Now, you also mentioned that you spoke to my client after his arrest and he was fully cooperative with you, was he not?
A: Yes.
Q: He agreed to speak to you?
A: Yes.
Q: In fact, he gave a written statement as well, did he not?
A: Yes, sir.
Q: Do you have that with you?
A: I believe that I do, at least a copy.

*916 Q: And he told you where he was at the time of the fire, correct?
A: Yes.
Q: He told you who he was with, did he not?
A: I believe so.
Q: Did you check that out? Did you investigate it?
A: I attempted to do that.
Q: Did you speak to Shavonne Chisholm?
A: No.
Q: That was the one name that he gave you though, true?
A: Yes, sir.
The State argued that this exchange introduced hearsay evidence of Fisher's alibi and opened the door to impeachment through his prior convictions under section 90.806(1), Florida Statutes (2003). Fisher claimed the testimony was not hearsay because he did not offer Fisher's statements to the detective for their truth, but to show that the State conducted a shoddy investigation. He also argued that the testimony was not exculpatory because Fisher could have meant that he and Chisholm together committed arson. After hearing extensive argument, the court ruled that Fisher's counsel had offered exculpatory hearsay designed to corroborate Fisher's alibi and allowed the State to enter evidence of the convictions.[1] The court admitted the convictions and read the jury a limiting instruction.
It is within the trial court's sound discretion to determine the admissibility of evidence, and its ruling on admissibility will not be disturbed absent an abuse of discretion. See, e.g., LaMarr v. Lang, 796 So.2d 1208, 1209 (Fla. 5th DCA 2001).
The court admitted evidence of Fisher's prior felony conviction under section 90.806(1), Florida Statutes (2003), which provided: "When a hearsay statement has been admitted in evidence, credibility of the declarant may be attacked and, if attacked, may be supported by any evidence that would be admissible for those purposes if the declarant had testified as a witness." This section allows the introduction of a defendant's felony convictions when he elicits his own exculpatory, hearsay statement through another witness during trial. Huggins v. State, 889 So.2d 743, 755-56 (Fla.2004); Kelly v. State, 857 So.2d 949, 949 (Fla. 4th DCA 2003); Werley v. State, 814 So.2d 1159, 1163 (Fla. 1st DCA 2002); Llanos v. State, 770 So.2d 725, 726 (Fla. 4th DCA 2000). "A defendant who chooses not to testify but who succeeds in getting his ... own exculpatory statements into evidence runs the risk of having those statements impeached by felony convictions." 5 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 806.04(2)(b) (Joseph M. McLaughlin, ed., 2d ed. 2002) (quoted by Huggins, 889 So.2d at 756).
We hold that the court did not abuse its discretion and was not obliged to rely on Fisher's assurance that the testimony was not hearsay. See Werley, 814 So.2d at 1162-63. The testimony suggested not that Fisher told the investigator he and his witness had committed the crime, but that he was elsewhere when the fire occurred. See Llanos, 770 So.2d at 726. Fisher's counsel had told the jury in opening statements that they would hear testimony about Fisher's alibi. See Werley, 814 So.2d at 1163. Fisher elicited that statement through his alibi witness during the trial. See id. The court did not err by *917 concluding that the testimony was exculpatory and offered for the truth that Fisher was elsewhere during the fire. See id.; see also Kelly, 857 So.2d at 950. Therefore, the court properly admitted the felony convictions.
We also disagree with Fisher's claim that the court erred by admitting the photo lineup.
The two-part test to determine whether an out-of-court identification may be admitted is (1) whether the police used an unnecessarily suggestive procedure to obtain an out-of-court identification, and (2) if so, considering all the circumstances, whether the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification.
State v. Hernandez, 841 So.2d 469, 471 (Fla. 3d DCA 2002) (citing Green v. State, 641 So.2d 391, 394 (Fla.1994)).
Fisher's lineup photo was not unduly suggestive because it did not stand out more than the others, and the men depicted exhibited similar facial characteristics. See, e.g., State v. Francois, 863 So.2d 1288, 1289-90 (Fla. 4th DCA 2004). Even if the photo had been unduly suggestive, this case presents no possibility of irreparable misidentification because King saw Fisher commit the crime and had known him for years. Because the photo was not a mug shot and did not stand out from the others, the cases Fisher cites are inapposite. Cf. Butler v. State, 544 So.2d 1115, 1116 (Fla. 3d DCA 1989); Lock v. State, 799 So.2d 384, 386 (Fla. 4th DCA 2001).
Because the trial court did not abuse its discretion by admitting the photo or evidence of Fisher's convictions, we AFFIRM.
GRIFFIN and MONACO, JJ., concur.
NOTES
[1] Fisher's opening statement had introduced Fisher's alibi. Chisholm testified she was with Fisher at another apartment on the night of the fire, and that he did not leave until the next morning.