# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D16-1755
_____

CHRISTOPHER JACKSON,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Leon County.
Angela C. Dempsey, Judge.

February 19, 2017

WINSOR, J.

Christopher Jackson appeals his convictions and sentences, claiming violations of the Fourth, Sixth, and Eighth Amendments. More specifically, Jackson argues that the trial court should have granted his second motion to suppress, that only a jury could determine his status as a Prison Releasee Reoffender (PRR), and that his life sentence constitutes cruel and unusual punishment. We affirm.

I.

Jackson and two others broke into a home and held the home's four occupants at gunpoint. The three assailants forced the victims into a bathroom and took turns holding them while the others collected valuables. Jackson later claimed one of the victims had shorted him some marijuana in a recent sale. He admitted he broke into the house but insisted he only intended to take back that marijuana. He claimed the other assailants—not he—had stolen the other items.

Among the stolen items was an iPhone, so police quickly looked to the "Find My iPhone" application to track the assailants. Armed with real-time tracking and the description the victims provided, officers broadcast a be-on-the-look-out (BOLO) alert. An officer quickly identified a car in the same area as the stolen iPhone, traveling in the same direction as the stolen iPhone, and containing people matching the assailants' general descriptions.

After waiting for backup, the officer stopped the car, removed and handcuffed the occupants, and conducted a protective sweep of the car. The officer initially saw nothing in plain view but then opened the trunk and found marijuana and a revolver with an altered serial number. Her decision to open the trunk was consistent with her department's "plus one" rule, under which (she later testified) officers always search the trunk of a vehicle during a felony traffic stop "to make sure there's no other occupants either in the vehicle or in the trunk."

Meanwhile, other officers brought the victims to the traffic-stop location. The victims identified Jackson and another male passenger as participants in the robbery, and officers arrested those two. Officers then searched the car's passenger compartment incident to arrest, and they found several items taken during the robbery including a wallet, a handgun, and a victim's driver's license. They also found the stolen iPhone that led to the quick apprehension.

The State charged Jackson with burglary of a dwelling, aggravated assault, marijuana possession, possession of a firearm

with an altered serial number, possession of a firearm by a convicted felon, and four counts of armed robbery.

Jackson, who represented himself at trial, adopted his co-defendant's two motions to suppress. The first motion sought to suppress the evidence found in the trunk before the show-up identification. The second motion sought to suppress the evidence found in the passenger compartment during the search incident to arrest.

The court granted the first motion saying it was "not convinced that [the plus-one] rule actually exists" and that it was "ludicrous" for officers to believe there could have been someone hiding in the trunk. The court also explicitly rejected the State's argument that the evidence should nevertheless be admitted under the inevitable-discovery exception, stating that "without the evidence from the trunk, there was no basis to detain the individuals and the show-up might never have occurred." After this ruling, the State moved to dismiss the charges for marijuana possession and possession of a firearm with an altered serial number.

But in a later hearing on the second motion to suppress, the court concluded police *were* justified in detaining Jackson for the show-up and that "the show-up lineup would have occurred irrespective of whether the property in the trunk had been found." The remaining counts then proceeded to trial.

The jury convicted Jackson of burglary of a dwelling, aggravated assault, and two counts of armed robbery. At sentencing, the court found that Jackson had committed these crimes within three years of being released from prison and that he therefore qualified for sentencing under the PRR Act. *See* § 775.082(9), Fla. Stat. (2012). Accordingly, the court sentenced Jackson to concurrent life sentences with a ten-year mandatory minimum in each of the armed-robbery counts, fifteen years' prison for burglary of a dwelling, and five years' prison with a three-year mandatory-minimum sentence for aggravated assault.

3

II.

Jackson's first argument on appeal is that the court should have suppressed the evidence found in the passenger compartment. He argues that without the evidence found in the trunk, there was no basis for searching the vehicle a second time or for detaining the occupants for the show-up identification. In other words, he argues, the search of the trunk (which the trial court found illegal) was the poisonous tree, and everything later found in the car was the fruit. *See Oregon v. Elstad*, 470 U.S. 298, 307-09 (1985). We conclude the trial court correctly rejected this argument.

Preliminarily, much of Jackson's argument focuses on the trial court's conclusion that officers illegally searched the trunk. Jackson insists that the trial court's ruling on that point obligated it to suppress evidence found *after* the trunk's search. He specifically argues that "the trial court's rulings were inconsistent and arbitrary." The trial court's order suppressing evidence from the trunk is not before us, and we are not obligated to presume the correctness of that order's legal conclusions—even assuming they were inconsistent with the court's later conclusions. The State was authorized to appeal the order suppressing evidence from the trunk, Fla. R. App. P. 9.140(c)(1)(B), but it chose not to—perhaps because it figured it could secure a conviction and life sentence with the remaining evidence alone. The State is not obligated to appeal adverse suppression rulings just to preserve convictions secured despite those rulings. We therefore must decide whether the suppression ruling that *is* before us was correct in its own right.

An officer may conduct an investigative stop when he or she has reasonable suspicion that the occupants have committed or are committing a crime. *Hunter v. State*, 660 So. 2d 244, 249 (Fla. 1995). An officer need not personally observe the events giving rise to reasonable suspicion, so long as facts are communicated to him by another officer or a reliable third party. *State v. Bowers*, 87 So. 3d 704, 707-08 (Fla. 2012). Courts evaluating whether an investigatory stop based on a BOLO was justified consider "(1) the length of time and

4

distance from the offense; (2) route of flight; (3) specificity of the description of the vehicle and its occupants; and (4) the source of the BOLO information." *Hunter*, 660 So. 2d at 249.

These factors weigh overwhelmingly in the State's favor. The robbery occurred at 5:45 a.m., and the officer initiated the stop shortly after 6:00 a.m. Officers knew the perpetrators' exact route because they were tracking the stolen iPhone, which was traveling in the same vicinity and in the same direction as Jackson's vehicle. Finally, the vehicle contained the same number of occupants as the BOLO description, and the officer saw that one of the occupants wore a camouflage hat, consistent with the BOLO. *Cf. id.* (holding that officer had reasonable suspicion to conduct traffic stop and detain occupants for a show-up identification based on BOLO where roughly an hour had passed since the crime was committed and BOLO description included number and description of occupants).

Given these facts, officers had reasonable suspicion to stop the vehicle and detain the occupants for the show-up identification. Once the victims identified Jackson, there was probable cause to arrest him (assuming there was no probable cause beforehand). And because officers reasonably believed that the vehicle contained evidence of the robbery, the subsequent search of the passenger compartment was justified as a search incident to arrest. *See Arizona v. Gant*, 556 U.S. 332, 343-44 (2009).

The search of the vehicle's passenger compartment was not a violation of the Fourth Amendment.

III.

Next, Jackson argues that because his eligibility for sentencing under the PRR Act was not found by the jury beyond a reasonable doubt, his heightened sentence violated his Sixth-Amendment rights in light of *Alleyne v. United States*, 133 S. Ct. 2151 (2013).

In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the Supreme Court held that any fact that increases a defendant's statutory

maximum sentence, other than the fact of a prior conviction, must be found by a jury or admitted by the defendant. Then, in *Alleyne*, the Supreme Court extended this rule to apply to any fact that increases any mandatory-minimum sentence. *Alleyne*, 133 S. Ct. at 2155. After *Apprendi* but before *Alleyne*, the Florida Supreme Court upheld the constitutionality of the PRR Act, rejecting arguments that the Act violated *Apprendi*. *See Robinson v. State*, 793 So. 2d 891, 893 (Fla. 2001).

Jackson contends that the United States Supreme Court's *Alleyne* decision effectively overruled the Florida Supreme Court's *Robinson* decision. He contends that in light of *Alleyne,* the PRR Act violates the Sixth Amendment. But this court explicitly rejected that argument in *Williams v. State*, 143 So. 3d 423, 424 (Fla. 1st DCA 2014). Jackson argues that *Williams* was wrongly decided, but this panel is bound to follow it.

IV.

Finally, we reject Jackson's argument that his life sentence violates the Eighth Amendment. The Florida Supreme Court has said that "to violate the Cruel and Unusual Punishments Clause, a prison sentence must, at least, be grossly disproportionate to the crime." *Adaway v. State*, 902 So. 2d 746, 749 (Fla. 2005). A life sentence for armed robbery falls well short of that standard. *Cf.*, *e.g.*, *Harmelin v. Michigan*, 501 U.S. 957 (1991) (no Eighth Amendment violation with life sentence for drug possession); *Rummel v. Estelle*, 445 U.S. 263 (1980) (no Eighth Amendment violation with life sentence for obtaining money by false pretenses based on recidivist statute). We likewise reject Jackson's argument that his sentence violates the Florida Constitution's prohibition against cruel and unusual punishments. *See* Art. I, § 17, Fla. Const. (noting that Florida provision "shall be construed in conformity with decisions of the United States Supreme Court which interpret the prohibition against cruel and unusual punishment").

To the extent Jackson argues his sentence is too harsh because it could have been lighter if he committed his crimes twelve days later

than he did, his timing does not make his punishment any more grossly disproportionate.[*] It is up to the Legislature to determine where the appropriate cutoff for a PRR sentence lies, and the Florida Legislature chose three years. *See Rummel*, 445 U.S. at 285 ("Like the line dividing felony theft from petty larceny, the point at which a recidivist will be deemed to have demonstrated the necessary propensities and the amount of time that the recidivist will be isolated from society are matters largely within the discretion of the punishing jurisdiction."). Regardless, the Florida Supreme Court has held that mandatory-minimum sentences under the PRR Act do not violate the Eighth Amendment. *State v. Cotton*, 769 So. 2d 345, 356 (Fla. 2000) ("[T]he [PRR] Act's mandatory sentencing scheme does not constitute 'cruel or unusual' punishment.").

AFFIRMED.

BILBREY and M.K. THOMAS, JJ., concur.

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____

Candice Kaye Brower and Melissa Joy Ford, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, and Kaitlin Weiss, Assistant Attorney General, Tallahassee, for Appellee.

_____

[*] The PRR Act allows the State to seek enhanced sentences for those who commit certain felonies within three years of release from prison. *See* § 775.082(9), Fla. Stat. (2012). Jackson committed his crimes just eleven days short of the three-year mark following his release.