# FIRST DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

No. 1D17-5007
_____

JESSIE FLOYD,

    Appellant,

v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Bay County.
Brantley S. Clark, Jr., Judge.

October 31, 2018

B.L. THOMAS, C.J.

Appellant, Jessie Floyd, appeals an order denying his postconviction motion pursuant to Florida Rule of Criminal Procedure 3.850. For the reasons discussed below, we affirm.

Appellant was convicted after a jury trial of armed robbery with a deadly weapon (Count I) and aggravated assault with a deadly weapon (Count II). The State filed a notice of intent to seek prison releasee reoffender (PRR) designation, but withdrew the notice before sentencing. Appellant was sentenced to twenty-five years in prison on Count I and a concurrent term of five years in prison on Count II. His convictions and sentences were affirmed on appeal without opinion. *See Floyd v. State*, 184 So. 3d 520 (Fla. 1st DCA 2016) (Table).

In Appellant's first ground, he argued that his attorney was ineffective for failing to promptly advise him of the State's notice

of intent to seek the PRR designation. He alleged that the notice was sent to defense counsel on May 6, 2015, but counsel did not open the e-mail until May 8, 2015. He asserted that she did not inform him of the notice until jury selection on May 11, 2015. He claimed that if his attorney had timely advised him of the PRR notice, he would have had an opportunity to review the evidence and determine that going to trial was not worth risking a PRR sentence, and he would have accepted the State's eight-year plea offer. He alleged that the State would not have withdrawn the offer, the trial court would have approved the offer, and the sentence imposed would have been less than the twenty-five-year prison sentence he ultimately received.

A claim of ineffective assistance of counsel is governed by *Strickland v. Washington*, 466 U.S. 668, 690 (1984). To prove ineffective assistance, an appellant must allege that (1) the specific acts or omissions of counsel which fell below a standard of reasonableness under prevailing professional norms, and (2) the appellant was prejudiced by these acts or omissions such that the outcome of the case would have been different. *See id.* at 690-692.

"If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler v. Cooper*, 566 U.S. 156, 168 (2012). In the context of plea negotiations, the first prong of the *Strickland* analysis can be satisfied by allegations that "counsel performed deficiently in (1) advising a defendant to reject a plea offer, (2) misadvising the defendant about the maximum penalty faced, or (3) failing to convey a plea offer." *Sirota v. State*, 95 So. 3d 313, 319 (Fla. 4th DCA 2012), *quashed on other grounds by State v. Sirota*, 147 So. 3d 514 (Fla. 2014). To establish prejudice, a defendant must allege that

> (1) he or she would have accepted the offer had counsel advised the defendant correctly, (2) the prosecutor would not have withdrawn the offer, (3) the court would have accepted the offer, and (4) the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Alcorn v. State*, 121 So. 3d 419, 430 (Fla. 2013) (citing *Missouri v. Frye*, 566 U.S. 134, 148 (2012)). "When determining whether defense counsel's misadvice concerning a plea prejudiced the defendant, the trial court must consider the circumstances 'at the time of the offer and what would have been done with proper and adequate advice.'" *Parenti v. State*, 225 So. 3d 949, 951 (Fla. 5th DCA 2017) (quoting *Alcorn*, 121 So. 3d at 432).

Here, Appellant's allegations of prejudice are facially sufficient. However, with regard to the deficiency prong, he does not allege that counsel failed to convey the eight-year plea offer, neglected to advise him of the penalties he faced, or otherwise misadvised him in connection with plea negotiations. Rather, he claims that counsel did not advise him of the PRR notice promptly enough to allow him to review the evidence and decide whether to accept the plea offer. Even assuming *arguendo* such allegations could establish a deficient performance on counsel's part, this claim is factually meritless.

At the beginning of jury selection on Monday, May 11, 2015, defense counsel asked for permission to place some information on the record. She explained that she had visited Appellant in jail on the preceding Wednesday, but he terminated the visit before she could convey all of the information she intended to provide. She subsequently received the PRR notice on Friday, May 8, 2015. She advised Appellant about the notice the morning of jury selection. She wrote him a note explaining the designation and how it would result in him serving 100% of the maximum sentence, and noted that one of his charged offenses was a first-degree felony punishable by life in prison. She also explained that there was a great deal of evidence against him and a strong likelihood that he would be convicted at trial. She informed him that if he was convicted, the judge would have no discretion to impose anything other than a life sentence.

In open court, defense counsel referred to the PRR designation as a "game changer" and urged Appellant to accept the eight-year plea offer to avoid spending the rest of his life in prison. She indicated the offer had been open for "many, many months," and the State was still willing to allow him to accept it that morning. She acknowledged that Appellant was upset with

how she was handling the case, but reminded him that they had assessed his trial prospects by reviewing the incriminating surveillance video and the other evidence against him.

At that point, Appellant interrupted by saying, "My face was not on the video." Counsel responded that there was DNA evidence and an identification by the clerk of the convenience store. Appellant replied, "That's weak." Defense counsel reiterated that if Appellant proceeded to trial, he would most likely be convicted, and the judge would not have discretion to consider what an appropriate sentence would be given the nature of the offenses and Appellant's history; instead, the PRR designation would remove all discretion and he would be sentenced to life in prison. She advised, "[S]low down and think about what you are doing." Appellant responded by asking the judge to remove counsel from the case, because he did not trust her. He complained that she was "scared to go to trial" and had repeatedly tried to persuade him to take the eight-year plea offer. The judge found no grounds to remove counsel from the case, so Appellant elected to represent himself.

Under these circumstances, this claim is refuted by the record. Defense counsel advised Appellant of the PRR notice on the next business day after she received it. By that time, she had already reviewed the incriminating evidence with him, but Appellant believed that her reluctance to proceed to trial was unreasonable. With the eight-year plea offer still available, counsel fully explained the PRR designation and she commendably warned Appellant in the direst possible terms that he was likely to lose at trial and spend the rest of his life in prison.

Despite this, Appellant rejected counsel's advice, declined to accept the eight-year plea offer, and proceeded to trial *pro se*. Given this information, counsel did not perform deficiently. She provided all of the information Appellant needed to consider the eight-year plea offer while it was still available. Even after he was fully advised of the pitfalls of his case and the severity of his potential sentence, the record reflects that Appellant had no intention of accepting the offer. Therefore, this claim was properly denied.

In Appellant's second ground, he argued that counsel was ineffective for failing to file a pretrial motion to suppress. This ground contained two subclaims. In subclaim (a), he alleged that a motion to suppress should have been filed on the basis that the detective who stopped him after the robbery had no probable cause to do so, given the victim's flawed and vague description of the suspect. In subclaim (b), Appellant asserted that the show-up identification was impermissibly suggestive, because he was in a police car and with a police officer at the time, which may have given the victim an impression of his guilt. He claimed that counsel should have also sought suppression of the voice identification on this basis. In his motion for rehearing after his amended motion was denied, he explained for the first time that counsel should have sought suppression of the evidence seized from his person—a knife, gloves, cigarettes, money, and a black plastic bag.

Insofar as Appellant argued in subclaim (a) that a motion to suppress should have been filed based upon the invalidity of his detention by the detective, this claim is facially insufficient. A defendant cannot show that counsel provided ineffective assistance by failing to file a motion to suppress if the motion would have been meritless. *Johnston v. State*, 63 So. 3d 730, 740 (Fla. 2011). Here, Appellant failed to provide any factual allegations about his encounter with the detective that would have supported a motion to suppress. Furthermore, he improperly identified the evidence that would have been subject to suppression for the first time in his motion for rehearing. *See* Fla. R. Crim. P. 3.850(j) ("A motion for rehearing must be based on a good faith belief that the court has overlooked *a previously argued issue of fact or law* or an argument based on a legal precedent or statute not available prior to the court's ruling." (emphasis added)). As this aspect of his claim remained facially insufficient after an opportunity to amend, it was properly denied with prejudice. *See* Fla. R. Crim. P. 3.850(f)(2) (providing that where a defendant is given an opportunity to amend and the amended motion remains insufficient, the trial court may provide another opportunity to amend or summarily deny the motion with prejudice).

This Court's records reflect that any further attempts to amend his motion would have proven futile. The record in Appellant's direct appeal reflects that he was detained less than .4 miles from the location of the robbery within 9 minutes of the be-on-the-lookout (BOLO) alert being issued.[*] The detective who detained Appellant testified that Appellant matched the suspect's description based upon his age, build, and his clothing, minus an "outer sweater." The detective made contact and asked Appellant questions. Appellant's answers and demeanor were evasive. He was then briefly detained while the victim was brought to the scene to make an identification. The victim identified Appellant based upon his clothing, his height and build, and his voice. It was only at this point that Appellant was arrested and his backpack was searched.

Under these circumstances, any motion to suppress challenging the legality of his detention would have been denied, as the detective had articulable reasonable suspicion to stop Appellant, and it was permissible to detain him long enough to bring the victim to identify him. *See State v. Leach*, 170 So. 3d 56, 60-62 (Fla. 2d DCA 2015). After the victim identified him, probable cause existed to support Appellant's arrest and a search incident to arrest. *See Jackson v. State*, 241 So. 3d 914, 917 (Fla. 1st DCA 2018).

With regard to Appellant's argument in subclaim (b) that counsel should have filed a motion to suppress the show-up identification, he did not provide supporting factual allegations regarding the circumstances of the identification. Thus, this aspect of his claim was also subject to denial with prejudice because it remained facially insufficient after an opportunity to amend. Regardless, it is also meritless.

---

[*] An appellate court may take judicial notice of its own records as well as those from any other court. *See Jackson v. State*, 127 So. 3d 706, 706 (Fla. 4th DCA 2013) (taking judicial notice of the record in the defendant's previous postconviction appeal in affirming the denial of a subsequent postconviction motion); *Pace v. State*, 826 So. 2d 996, 997 (Fla. 3d DCA 2001) (taking judicial notice of the file in the appellant's direct appeal in order to resolve a postconviction appeal).

For an out-of-court identification to be suppressed, it must be shown that (1) the police used an unnecessarily suggestive procedure, and (2) the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification. *See Fisher v. State*, 924 So. 2d 914, 917 (Fla. 5th DCA 2006). "[A] show-up is inherently suggestive because a witness is presented with only one suspect for identification. However, a show-up is not invalid if it does not give rise to a substantial likelihood of irreparable misidentification given the totality of the circumstances." *Perez v. State*, 648 So. 2d 715, 719 (Fla. 1995) (internal citations omitted). In evaluating the likelihood of misidentification, the trial court should consider (1) the witness' opportunity to view the suspect at the time of the offense, (2) the witness' degree of attention, (3) the accuracy of the witness' previous description of the suspect, (4) the witness' level of certainty, and (5) the length of time between the offense and the identification. *Neil v. Biggers*, 409 U.S. 188, 199 (1972).

As discussed above, the show-up identification in this case occurred within minutes of the robbery, at which time the victim identified Appellant by his height, build, clothing, and voice. Furthermore, the transcript of the 911 recording played during trial reflects that not only did the victim interact with Appellant during the robbery, she also believed that he had been in the store earlier that day and was a regular customer. She recognized his voice and knew which direction he usually came from when he visited the store. She described Appellant as an African-American man wearing blue jeans, a gray bandana, and a gray hoodie. Aside from Appellant's assertion in his motion that his hoodie was actually brown, the victim's description matches Appellant's description of what he was wearing that night. Given this information, even if defense counsel had filed a motion to suppress the show-up identification, any such motion would have been denied. Therefore, this aspect of his claim was properly denied.

In Appellant's third ground, he argued that the trial court erred in failing to permit him to review deposition transcripts before representing himself at trial. In his fourth ground, he asserted that the trial court abused its discretion by ruling that he could not impeach his own witnesses. These claims are not

7

cognizable pursuant to rule 3.850, and were therefore properly denied. *See* Fla. R. Crim. P. 3.850(c) ("This rule does not authorize relief based upon grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence."); *Johnson v. State*, 985 So. 2d 1215, 1215 (Fla. 1st DCA 2008) (identifying prosecutorial misconduct, insufficiency of the evidence, and trial court error as issues that should have been raised on direct appeal and are not cognizable in a collateral postconviction motion).

In Appellant's fifth ground, he claimed that his attorney was ineffective for failing to make deposition transcripts available to him so that he could assess the strengths and weaknesses of his case. He alleged that he requested that his attorney provide him with the details of the victim's deposition testimony, and subsequently asked her for deposition transcripts. He asserted that counsel told him that she did not order deposition transcripts because she did not need them to prepare for trial. He argued that if he had known what the victim said at depositions prior to trial, he would have had more evidence to use to impeach her, in addition to the conflicting statements in her 911 call and her sworn statement to police. He also claimed that if he had access to transcripts, he might have determined that the State's evidence was overwhelming and accepted the eight-year plea offer.

The record reflects that Appellant chose to represent himself on the day of jury selection. The judge advised him that making that decision at that late stage would not entitle him to seek a continuance. The judge cautioned Appellant that he would have to pick a jury that day and go to trial in two days. Appellant asked defense counsel about obtaining deposition transcripts, and counsel responded that she did not seek to have the depositions transcribed, because she did not deem transcripts necessary for trial. Appellant asked to have the depositions transcribed, and the judge reiterated that counsel had deemed the transcripts unnecessary for her trial preparation and that the trial would not be postponed based upon Appellant's decision to represent himself on the eve of trial.

8

On the day of trial, Appellant advised the judge that he would not be able to represent himself to the fullest of his abilities without deposition transcripts. The judge repeated his determination that counsel had not ordered them and no continuances would be granted to allow Appellant to obtain them. Under these circumstances, it appears that defense counsel had determined that she did not require the deposition transcripts to prepare for trial. She cannot now be deemed ineffective for failing to anticipate that Appellant would elect to represent himself on the eve of trial and would require the transcripts to prepare.

Furthermore, Appellant did not properly allege prejudice. He does not assert pursuant to *Strickland* that the outcome of the trial would have been different but for counsel's failure to obtain the deposition transcripts. Nor does he properly allege prejudice in connection with the eight-year plea offer under *Alcorn*. Instead, he made contradictory claims that the transcripts may have assisted him in impeaching the victim's already flawed testimony, or the transcripts may have shown him that the evidence was overwhelming and convinced him to accept a plea deal. Thus, this ground was subject to denial, because it remained facially insufficient after an opportunity to amend. Additionally, his allegations are too speculative to support an entitlement to postconviction relief. *See Connor v. State*, 979 So. 2d 852, 863 (Fla. 2007) ("Relief on ineffective assistance of counsel claims must be based on more than speculation and conjecture.").

In Appellant's sixth and final ground, he argued that the cumulative effect of the trial court's errors and his attorney's ineffective assistance deprived him of a fair trial. However, because all of Appellant's individual claims are subject to denial for the reasons discussed above, his claim of cumulative error must also fail. *See Griffin v. State*, 866 So. 2d 1, 22 (Fla. 2003).

AFFIRMED.

KELSEY and WINOKUR, JJ., concur.

———————————————————

9

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____

Jessie Floyd, pro se, Appellant.

Pamela Jo Bondi, Attorney General, and Virginia C. Harris, Assistant Attorney General, Tallahassee, for Appellee.