# FIRST DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

No. 1D18-403
_____

NORMAN J. THOMPSON,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Duval County.
Russell Healey, Judge.

April 22, 2019

ROWE, J.

Norman Thompson was convicted in 2013 for the sexual battery of a six-year-old girl and sentenced to life imprisonment. After his judgment and sentence were affirmed, *Thompson v. State*, 174 So. 3d 453 (Fla. 1st DCA 2015), Thompson moved for postconviction relief, raising multiple claims of ineffective assistance of counsel. The postconviction court summarily denied his motion, and this appeal follows. We affirm.

Facts[1]

The investigation that led to Thompson's arrest began when a homeless man named Dwayne Lampley reported to police that a mother was prostituting her six-year-old daughter (S.G.) for drugs and money. Lampley was a drug addict who would go to the mother's residence to do drugs. Lampley described the house as a "crack house" where the children (S.G. and her younger brother) were neglected. The children were frequently unclean, without clothing, and hungry because they didn't have enough food. Lampley witnessed at least seven men, including Thompson (whom he knew as "NJ"), "mess" with S.G. He did not see Thompson physically molest the child but recalled once seeing Thompson give S.G. a bath. He also saw Thompson grab the child on her thigh and then chase her upstairs. Lampley reported the child's living conditions to the police after S.G. asked Lampley to help her and her mother.

S.G., who was living with her grandmother at the time, was interviewed by an investigator from the Department of Children and Families. S.G. initially denied any abuse. But S.G.'s grandmother suspected that the child had denied the abuse out of fear. The grandmother's suspicions arose from her discovery of an unusual discharge in the child's underwear during a visit months before DCF began its investigation of the mother. When the grandmother learned that DCF was investigating potential abuse, she asked her granddaughter if anyone had touched her other than her family. S.G. told her grandmother that "NJ" and two other men had touched her. She said that "NJ" would lie on top of her and "wiggle." S.G. added that "NJ" was her "boyfriend" but that she was not supposed to tell her mother about their relationship. The grandmother knew that "NJ" had rented one of the rooms in her daughter's house for a time.

Following S.G.'s disclosures to the grandmother, the grandmother took S.G. to a second interview with the Child

---

[1] We take judicial notice of this Court's records in Thompson's direct appeal. *See Floyd v. State*, 257 So. 3d 1148, 1153 n.* (Fla. 1st DCA 2018).

Protection Team. During the interview, S.G. recounted her sexual battery by three men, including one called "NJ." S.G. stated that "NJ" placed his "weenie" on her "coochie." S.G. picked all three men out of a lineup and identified Thompson as "NJ." Thompson was arrested and charged with sexual battery on a child less than the age of twelve.

At trial, S.G.'s mother admitted to a long-term addiction to crack cocaine and recalled that Thompson would come to her house to do drugs. Thompson also lived in the house for a short period of time. S.G. never reported abuse to the mother, and the mother never saw Thompson physically abuse S.G. The mother did, however, recall once walking in on Thompson giving S.G. a bath. When she confronted him about it, Thompson insisted that it was not "a big deal" and he "was just urinating." Another night, she saw Thompson in S.G.'s bedroom crouched beside the bed holding S.G. in his arms. The mother noted that both Thompson and S.G. were clothed at the time. Thompson claimed he was comforting S.G. after waking from a bad dream. The mother recalled another instance where she found candy, unopened children's movies, children's toys, and a douche in Thompson's suitcase.

S.G.'s interview with the Child Protection Team was played for the jury. S.G. also testified via a prerecorded video. At the time of her perpetuated testimony, she was in first grade. S.G. testified that when she lived with her mother, men would come over to "smoke." "NJ" would bring her candy and snacks and told her that he was her "boyfriend." "NJ" once told her to get on the bed, then got on top of her and put his "weenie" in her. S.G. used anatomical dolls to demonstrate what "NJ" did to her.

In the video of S.G.'s perpetuated testimony, defense counsel cross-examined S.G. The child could not recall seeing "NJ's" "private part," or seeing Thompson or her mother without clothes. She did not tell her mother about the bad things happening to her, but she did tell her grandmother. S.G. did not recall talking to police or other officials with uniforms or badges.

The jury returned a verdict finding Thompson guilty as charged. Thompson was sentenced to life imprisonment and designated a sexual predator. Following the summary denial of

3

his motion for postconviction relief, Thompson appealed to this Court.

## Analysis

We review the summary denial of a postconviction motion de novo. *Flagg v. State*, 179 So. 3d 394, 396 (Fla. 1st DCA 2015). We affirm the summary denial of a motion alleging claims of ineffective assistance of counsel where the claims are legally insufficient or conclusively refuted by the record. *Crumitie v. State*, 842 So. 2d 271, 273 (Fla. 1st DCA 2003). To raise a legally sufficient claim, the movant must allege that counsel's performance was outside the range of reasonable professional assistance, and there is a reasonable probability that the outcome would have been different but for counsel's deficient performance. *Curran v. State*, 229 So. 3d 1266, 1268-69 (Fla. 1st DCA 2017) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). If a legally sufficient claim is raised, "the trial court must attach portions of the record that conclusively refute the claim[] in order to properly issue a summary denial." *Ortiz v. State*, 968 So. 2d 681, 684 (Fla. 1st DCA 2007). Because there was no evidentiary hearing in this case, we accept the factual allegations as true to the extent they are not refuted by the record. *Nordelo v. State*, 93 So. 3d 178, 186 (Fla. 2012). Here, Thompson raised twelve[2] claims of ineffective assistance of counsel, all of which are either legally insufficient or conclusively refuted by the record.

Thompson argued that his defense counsel was ineffective for failing to challenge Lampley's affidavit, which was used to establish probable cause for Thompson's arrest. Thompson asserted that Lampley did not write the affidavit and was not administered an oath, therefore the affidavit was invalid. The trial court denied this claim because Thompson failed to allege what he believed defense counsel should have done to challenge the validity of Lampley's affidavit. Assuming Thompson intended

---

[2] In his postconviction motion, Thompson raised a thirteenth claim of cumulative error. Because Thompson did not argue cumulative error in his initial brief, we cannot consider the claim. *See Williams v. State*, 845 So. 2d 987 (Fla. 1st DCA 2003).

to argue counsel was ineffective for failing to move to dismiss the charges for a lack of probable cause, "an indictment or information may not be dismissed by a trial court on the ground that the police unlawfully arrested the defendant based on no probable cause." *State v. Spencer*, 443 So. 2d 1086, 1086 (Fla. 3d DCA 1984). Moreover, the record reflects that the arrest warrant was supported by sufficient probable cause. "Unlike the burdens of proof in a criminal trial, the obligation to establish probable cause in an affidavit may be met by hearsay, by fleeting observations, or by tips received from unnamed reliable informants whose identities often may not lawfully be disclosed, among other reasons." *Johnson v. State*, 660 So. 2d 648, 654 (Fla. 1995) (citations omitted). Here, the arrest affidavit indicates that it was based not only on Lampley's affidavit, but also the detective's independent investigation of the alleged crimes. That investigation included listening to S.G.'s recorded interview, during which the child named Thompson as one of the men who sexually battered her. Because the arrest warrant was supported by probable cause, any challenge based on the credibility of Lampley's affidavit would have been meritless. Counsel cannot be deemed ineffective for filing a meritless motion. *Lugo v. State*, 2 So. 3d 1, 21 (Fla. 2008). Therefore, the trial court properly denied this claim.

Thompson next claimed that his defense counsel was ineffective for failing to object to the jury composition where the State struck every African-American juror from the jury panel. The trial court properly summarily denied this claim as legally insufficient. Postconviction relief predicated on the failure to raise a *Neil*[3] objection cannot be granted unless counsel's error resulted in a jury that was not impartial. *Carratelli v. State*, 961 So. 2d 312 (Fla. 2007); *Pryear v. State*, 243 So. 3d 479, 483-83 (Fla. 1st DCA 2018). Thompson failed to allege that the jury selected was not impartial. He was given an opportunity to amend this claim but failed to remedy the defect. *See Nelson v. State*, 977 So. 2d 710, 711 (Fla. 1st DCA 2008) ("*Spera* [*v. State*, 971 So. 2d 754 (Fla. 2007),] does not impose on trial courts or court personnel the nearly impossible burden to . . . explain why the claims are

---

[3] *State v. Neil*, 457 So. 2d 481 (Fla. 1984).

5

insufficient or how to cure the insufficiency."). Thus, the trial court properly denied this claim.

In his next claim, Thompson argued that his defense counsel was ineffective for failing to investigate the case and adequately prepare for trial. Thompson asserted that if counsel had spent more time with him, counsel would have learned information, which if used at trial, would have led to a different outcome. This claim was properly denied. Thompson claimed that counsel would have learned that the State's witnesses were tampered with to give false and misleading statements, and S.G.'s testimony was coached. But he gave no further details about who was tampering with the witnesses or facts to support his claim that S.G. was coached. The conclusory nature of these allegations rendered this claim legally insufficient. *Mohr v. State*, 17 So. 3d 1249, 1249 (Fla. 2d DCA 2009). Thompson also claimed that had counsel adequately prepared for trial, he would have learned that the State edited the videos shown at trial to exclude a portion of the video during which S.G. allegedly recanted and the portion containing defense counsel's cross-examination of S.G. However, this allegation is refuted by Thompson's own admission that the trial transcript showed those portions of the video were played for the jury. Thompson further contended that counsel would have learned other relevant information to aid in his defense, including the fact that Thompson was an acquaintance of S.G.'s family, and Lampley was a police informant. That Thompson was an acquaintance of S.G.'s family does not create reasonable doubt as to his guilt. And he failed to explain how discovery of Lampley's status as a police informant would have changed the outcome of the case. Thompson did not establish that there was a reasonable probability the result of the trial would have been different had the jury heard this information. *See Strickland*, 446 U.S. at 694. Accordingly, the trial court properly denied this claim.

Thompson next claimed that his defense counsel was ineffective for failing to object to the playing of edited versions of the recorded videos. He contended that the videos played for the jury omitted the portion of the Child Protective Team interview where S.G. allegedly recanted and the cross-examination portion of S.G.'s perpetuated testimony. However, Thompson conceded that the trial transcript shows these portions of the videos were

6

played for the jury.  As the record conclusively refutes this claim, the trial court properly denied it.  *See Crumitie*, 842 So. 2d at 273.

Next, Thompson claimed that his defense counsel was ineffective for failing to object to what he argued were two instances of false testimony.  He essentially raised two *Giglio*[4] claims, both of which the trial court denied as legally insufficient.  To allege a legally sufficient *Giglio* claim, a defendant must demonstrate that the trial testimony was false, the prosecutor knew it was false, and the testimony was material.  *Clemmons v. State*, 1 So. 3d 1256, 1256 (Fla. 4th DCA 2009).  Thompson alleged that the detective gave false testimony regarding S.G.'s identification of Thompson at a photo-line up.  But he failed to allege that the detective deliberately lied, that the prosecutor knew the detective lied, or that defense counsel had reason to believe the detective lied.  *Id.*  Although Thompson was given an opportunity to amend this claim to remedy the pleading deficiencies, he failed to do so.  *See Nelson*, 977 So. 2d at 711 ("Although a trial court in its discretion may grant more than one opportunity to amend an insufficient claim, *Spera* does not mandate repeated opportunities.").  Thompson also asserted that Lampley provided false testimony in that his trial testimony was inconsistent with his deposition testimony.  However, inconsistent testimony does not equate to false testimony.  Moreover, counsel's performance with respect to Lampley was not deficient, as the record reflects that he cross-examined Lampley about these inconsistencies.  As both legally insufficient and conclusively refuted by the record, the trial court properly denied this claim.  *See Crumitie*, 842 So. 2d at 273.

In his next claim, Thompson argued that his counsel was ineffective for failing to impeach Lampley, whom Thompson describes as the State's "key witness."  The trial court properly denied this claim because Thompson failed to establish either deficient performance or prejudice.  The record shows defense counsel cross-examined Lampley about his known drug use and

---

[4] *Giglio v. United States*, 405 U.S. 150 (1972), provides a remedy where the State has knowingly presented perjured testimony at trial.

7

unstable life and questioned him about the inconsistencies in his story. Thompson did not suggest what line of testimony would have been more effective in impeaching Lampley "or how the failure to do so affected his trial." *See Mohr v. State*, 17 So. 3d 1249, 1249 (Fla. 2d DCA 2009). Moreover, there is no reasonable probability that impeaching Lampley would have changed the outcome of the case in light of S.G.'s perpetuated testimony and where Lampley never testified that he saw Thompson sexually abuse the child. *See Kormondy v. State*, 983 So. 2d 418, 432-33 (Fla. 2007) (finding failure to impeach state witnesses was not ineffective where there was sufficient evidence of guilt). Therefore, the trial court properly denied this claim.

Thompson next claimed that his defense counsel was ineffective for failing to call an expert witness to testify generally about child sexual abuse. Defense counsel retained an independent medical expert to examine S.G. and, although the expert was under subpoena, defense counsel decided not to call the expert at trial. The trial court properly denied this claim as conclusively refuted by the record. During Thompson's case-in-chief, the court inquired whether Thompson agreed with counsel's decision not to call the independent medical expert. Thompson indicated three times that he agreed with defense counsel's decision. "An appellant is not entitled to go behind sworn representations made to the court in a postconviction proceeding." *Davis v. State*, 938 So. 2d 555, 557 (Fla. 1st DCA 2006). Accordingly, this claim was properly denied.

Next, Thompson claimed that his defense counsel was ineffective for failing to present evidence that there were "more culpable" defendants. Thompson asserted there were two other defendants, tried separately, who also abused the child. The trial court denied this claim as legally insufficient, explaining "the Court is unaware of any legally valid defense that would have excused or mitigated the Defendant's abuse of the child simply because other persons may have also abused her." We agree. That there were two other men who may have also abused the child would be irrelevant to the jury's determination of whether Thompson abused the child. Their actions, even if more "culpable," would not excuse or mitigate Thompson's culpability. There is no reasonable probability that such evidence would have changed the

8

outcome of the trial. *Spencer*, 842 So. 2d at 61. Thus, the trial court properly denied this claim.

Thompson next claimed that his defense counsel was ineffective for failing to call him as a witness to testify on his own behalf. The trial court denied this claim as conclusively refuted by the record because Thompson indicated at trial that it was his decision not to testify. Indeed, during a lengthy colloquy, Thompson informed the trial court that he had sufficient time with counsel to discuss his decision not to testify. He confirmed that counsel had answered all his questions and that it was his own decision not to testify. Thompson cannot now go behind his sworn representations to claim that counsel was ineffective for failing to call him as a witness. *Davis*, 938 So. 2d at 557. Moreover, Thompson cannot demonstrate that his proposed testimony, including hearsay that the grandmother coached S.G. and Lampley was an unreliable witness, would have changed the outcome of the trial. Because Thompson cannot go behind his sworn representations and offered no facts to which he could have testified that would have affected the outcome of the trial, the trial court properly denied this claim.

Thompson also claimed that his defense counsel was ineffective for failing to object to the giving of jury instructions on the lesser-included crimes of attempted sexual battery and battery because there was no evidence to support those charges. He argued counsel's failure to object to the jury instructions prevented the jury from the possibility of exercising its pardon power. The trial court properly denied this claim as legally insufficient because it is the *inclusion* of lesser-included jury instructions that allows the jury to exercise its pardon power. We also reiterate that, as a matter of law, the possibility of a jury pardon cannot form the basis for a finding of prejudice under *Strickland*. *Johnson v. State*, 247 So. 3d 689, 697 (Fla. 1st DCA 2018) (quoting *Sanders v. State*, 946 So. 2d 953, 960 (Fla. 2006)).

In his next claim, Thompson argued that his defense counsel was ineffective for failing to object to what Thompson classified as three improper arguments made by the State during its closing argument. The trial court denied this claim as conclusively refuted by the record. Our review of the record confirms there was nothing

9

improper about the State's closing. With respect to the first comment, Thompson asserted the prosecutor improperly "vouched" for the credibility of State witnesses Lampley, S.G., and S.G.'s mother. "Improper prosecutorial 'vouching' for the credibility of a witness occurs where a prosecutor suggests that she has reasons to believe a witness that were not presented to the jury, or, stated differently, where the prosecutor implicitly refers to information outside the record." *Jackson v. State*, 89 So. 3d 1011, 1018 (Fla. 4th DCA 2012). Here, the prosecutor explained why the jury should believe the witnesses based on the substance of their testimony at trial. The prosecutor neither expressed personal belief nor referred to information or knowledge outside the record.

The second argument Thompson made in relation to this claim was that the prosecutor made personal attacks on him. "It is improper for a prosecutor to refer to the accused in derogatory terms, in such manner as to place the character of the accused in issue." *Pacifico v. State*, 642 So. 2d 1178, 1183 (Fla. 1st DCA 1994) (citation omitted). Thompson did not identify which of the prosecutor's comments amounted to a personal attack. This alone is reason to deny his claim. Even so, there are only two comments Thompson could be referencing: "You know, when you decide to rape children in a crack house you're going to get different versions about what happened in that crack house because they're all high smoking crack every day" and the prosecutor's argument that Thompson, as a "human being addicted to crack cocaine," would not have had candy and toys in his bag for any other reason than to entice the child. Viewed in context, these comments do not amount to improper personal attacks on Thompson's character, but rather reasonable arguments based on the evidence presented at trial that Thompson committed the sexual acts at a "crack house" and S.G.'s testimony that "NJ" gave her candy and toys. *See Lubin v. State*, 963 So. 2d 822, 824 (Fla. 4th DCA 2007) (noting that when evaluating a prosecutor's comment for impropriety, the comment "should be examined in the context in which it is made"). Any objection to the prosecutor's arguments would have been meritless, and counsel cannot be ineffective for the failure to raise a meritless objection. *Owen v. State*, 986 So. 2d 534, 551 (Fla. 2008).

Thompson also argued the prosecutor made a "golden rule" argument, and defense counsel was ineffective for failing to move for a mistrial. A golden rule argument is one that asks the jurors to put themselves in the place of the victim or to imagine the pain or fear of the victim. *Pagan v. State*, 830 So. 2d 792, 812 (Fla. 2002). Because the record shows that no such argument was made, the trial court properly denied this claim as conclusively refuted by the record. *See Crumitie*, 842 So. 2d at 273.

In his final claim, Thompson argued that his defense counsel was ineffective for failing to timely move for a new trial. The trial court properly denied this claim as legally insufficient. Although Thompson specified the grounds that counsel should have raised in a timely motion for new trial, Thompson failed to demonstrate there was a reasonable probability that, had it been filed, the motion would have been granted. *Lamb v. State*, 124 So. 3d 953, 957 (Fla. 2d DCA 2013). After being given an opportunity to amend this claim, Thompson failed to remedy the pleading defect. *Nelson*, 977 So. 2d at 711.

Because Thompson's claims were legally insufficient or conclusively refuted by the record, we affirm the trial court's summary denial of his motion for postconviction relief.

BILBREY and WINSOR, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Norman James Thompson, pro se, Appellant.

Ashley Moody, Attorney General, and Sharon Traxler, Assistant Attorney General, Tallahassee, for Appellee.